## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Pacific Life Insurance Company,

                Plaintiff,

v.

U.S. BANK, NATIONAL
ASSOCIATION, as Securities
Intermediary,

                Defendant.

Case No. 1:23-cv-20262-BB

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Ashley Gomez-Rodon
Southeast Financial Center
200 South Biscayne Blvd., Ste. 3000
Miami, FL 33131
Phone: (786) 871-3996
Fax: (305) 704-5955
agomez-rodon@cozen.com

Joseph M. Kelleher (*pro hac vice*)
Kara E. Cheever (*pro hac vice*)
Philip J. Farinella (*pro hac vice*)
1650 Market St., Ste. 2800
Philadelphia, PA 19103
Phone: (215) 665-2000
jkelleher@cozen.com
kcheever@cozen.com
pfarinella@cozen.com

**COZEN O'CONNOR P.C.**

*Attorneys for Plaintiff,*
*Pacific Life Insurance Company*

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

     A.    The Coventry STOLI Scheme .............................................................. 3

     B.    The Application And Issuance Of The Weiser Policy. ........................... 5

     C.    This Litigation And U.S. Bank's Motion To Dismiss. ......................... 6

ARGUMENT ...................................................................................................................... 7

     I.    THIS COURT HAS PERSONAL JURISDICTION OVER U.S. BANK. ............. 7

         A.    There Is Jurisdiction Over U.S. Bank Under Florida's Long-Arm Statute. ................................................................................................. 7

         B.    This Court's Exercise Of Personal Jurisdiction Is Constitutional. ........... 11

         C.    To The Extent This Court Is Not Satisfied That Personal Jurisdiction Exists Over U.S. Bank, Jurisdictional Discovery Should Be Permitted. ................................................................................. 16

     II.    THIS COURT SHOULD NOT ABSTAIN FROM THIS ACTION. .................... 17

         A.    The First-Filed Rule Holds That This Court Should Preside Over This Case. ............................................................................................ 17

         B.    The Ameritas Abstention Doctrine Is Inapplicable And, Regardless, Weighs In Favor Of Maintaining This Action. ..................... 19

CONCLUSION ................................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Bodycare Solutions v. Malone Int'l*,
   514 F. Supp. 2d 1326 (S.D. Fla. 2007) ...................................................................7

*Ameritas Variable Life Ins. Co. v. Roach*,
   411 F.3d 1328 (11th Cir. 2005) ..............................................................3, 17, 19

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
   608 F. Supp. 2d 1349 (S.D. Fla. 2009) .................................................................11

*Estate of Barotz v. Vida*,
   2022 WL 16833545 (D. Del. Nov. 9, 2022) .........................................................13

*Cornell & Co. v. Home Ins. Companies*,
   1995 WL 46618 (E.D. Pa. Feb. 6, 1995) ...............................................................8

*In re Flint Water Cases*,
   2018 WL 1638758 (E.D. Mich. Apr. 5, 2018)........................................................8

*Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*,
   791 So. 2d 4 (1st Fla. DCA 2000) ......................................................................7, 9

*JES Properties, Inc. v. USA Equestrian, Inc.*,
   253 F. Supp. 2d 1273 (M.D. Fla. 2003)................................................................10

*Lincoln Ben. Life Co. v. Joanne Bauer Irrevocable Life Ins. Tr.*
   *12-2-2005*, 2013 WL 24590 (M.D. Fla. Jan. 2, 2013) ......................................8, 12

*Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*,
   2017 WL 6539244 (D.N.J. Dec. 20, 2017)...........................................................12

*Lincoln Nat'l Life Ins. Co. v. Griffin*,
   2009 WL 10668502 (S.D. Fla. May 12, 2009) .....................................................11

*Estate of Malkin*,
   379 F. Supp. 3d 1263 (S.D. Fla. 2019), *aff'd*, 998 F.3d 1186 (11th Cir. 2021)................1, 2, 4

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ...........................................................................17

*McGee v. International Life Insurance Company*,
   355 U.S. 220 (1957)........................................................................................12, 13

*Estate of Miller v. Toyota*,
2007 WL 4482589 (M.D. Fla. Dec.18, 2007) ........................................................................9

*Northwest Airlines v. Am. Airlines*,
989 F.2d 1002 (8th Cir. 1993) ....................................................................................17, 18

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ............................................................................................15

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir.1982) ...............................................................................................17

*Pierson v. Orlando*,
619 F. Supp. 2d 1260 (M.D. Fla.2009) ..............................................................................9

*Posner v. Essex Ins. Co.*,
178 F.3d 1209 (11th Cir. 1999) ..................................................................................10, 15

*Primerica Fin. Servs., Inc. v. Mitchell*,
48 F. Supp. 2d 1363 (S.D. Fla. 1999) ..............................................................................10

*Principal Life Ins. Co. v. Mayer for Mignon Kopel Life Ins. Tr.*,
2009 WL 10668947 (S.D. Fla. Dec. 15, 2009) ..................................................................8

*Prudential Ins. Co. v. Doe*,
140 F.3d 785 (8th Cir. 1998) ............................................................................................18

*Reassure America Life Ins. Co. v. Midwest Resources, Ltd.*,
721 F. Supp.2d 346 (E.D. Pa. 2010) ................................................................................12

*Sierra Equity Group v. White Oak Equity Partners*,
2008 WL 1771857 (S.D. Fla. Apr. 15, 2008) ..................................................................16

*Smith v. Life Partners, Inc.*,
2007 WL 2847400 (N.J. Super. Ct. App. Div. Oct. 3, 2007) ..........................................14

*Smolinski v. Continental Airlines*,
2000 WL 1100106 (S.D. Fla. July 25, 2000) ...................................................................12

*Sun Life v. U.S. Bank*,
2016 WL 161598 (S.D. Fla. Jan. 14, 2016) ("*Malkin*"), *aff'd*, 693 F. App'x
838 (11th Cir. 2017) ............................................................................................................1

*Sun Life v. U.S. Bank*,
369 F. Supp. 3d 601 (D. Del. 2019) ("*Sol*") ......................................................................5

*Sun Life v. Wells Fargo*,
2021 WL 5997986 (D.N.J. Dec. 20, 2021) ("*Fruchter*") .................................................19

*U.S. Bank v. Sun Life*,
  2016 WL 8116141, at *2 (E.D.N.Y. Aug. 30, 2016) ("*Van de Wetering*")........................5, 13

*Walden v. Fiore*,
  571 U.S. 277 (2014).......................................................................................................11

*Wells Fargo Bank, N.A. v. Pruco Life Ins. Co.*,
  200 So. 3d 1202 (Fla. 2016).........................................................................................15

*Wilcox v. Stout*,
  637 So.2d 335 (Fla. 2d DCA 1994) ..........................................................................10, 11

*Wilmington Trust v. Lincoln Benefit Life Co.*,
  2018 WL 4959195 (S.D. Fla. Aug. 14, 2018)...............................................................13

## Statutes

Fla. Stat. § 48.193 ...............................................................................................7, 8 10

Fla. Stat. § 626.99289 (2017)...............................................................................................15

Fla. Stat. § 626.99291 (2017)...............................................................................................16

## Other Authorities

Fed. R. Civ. P. 13(a) .............................................................................................20

## INTRODUCTION

This case is about whether a $20 million life insurance policy issued by Pacific Life Insurance Company ("Pacific Life") on the life of a Florida senior citizen named Judith Weiser (the "Policy") is void *ab initio* for lack of insurable interest under Delaware law. As explained in the Amended Complaint, the Policy was manufactured by investors for investors through a Delaware-based stranger-originated life insurance ("STOLI") scheme run by a family of entities known as Coventry. This Court is no stranger to Coventry STOLI cases. Back in 2014, a different insurer filed an action against U.S. Bank alleging that a different policy U.S. Bank owned insuring the life of a different Florida senior citizen, Phyllis Malkin, was void *ab initio* for lack of insurable interest under Delaware law. Although the policy at issue in the *Malkin* case was governed by Delaware law—like the Weiser Policy is—U.S. Bank did not object to this Court exercising personal jurisdiction over it. Instead, back then at least, U.S. Bank took the position that STOLI cases should be litigated where the underlying insured resided because that was, in U.S. Bank's words, "the most natural forum."[1]

But *Malkin* did not go the way U.S. Bank hoped. Instead, this Court held that the Coventry-procured policy at issue was void *ab initio* for lack of insurable interest under Delaware law and that Coventry's scheme was "simply smoke and mirrors meant to obscure the identity of the party responsible for procuring the Policy."[2] This Court's decision in that regard was affirmed by the Eleventh Circuit as being "thorough and well-reasoned."[3] After that, a different policy manufactured through the same Coventry scheme on the life of Ms. Malkin was

---

[1] Ex. A, U.S. Bank Br., *Sun Life v. U.S. Bank*, No. 1:16-cv-1032, Dkt. 29 at 9 (D. Del. June 14, 2017) ("*Wilhelm*").

[2] *Sun Life v. U.S. Bank*, 2016 WL 161598, at *17 (S.D. Fla. Jan. 14, 2016) (Bloom, J.) ("*Malkin*"), *aff'd on this issue by* 693 F. App'x 838, 841 (11th Cir. 2017).

[3] *Sun Life v. U.S. Bank*, 693 F. App'x 838, 841 (11th Cir. 2017).

also challenged for lack of insurable interest in this Court; in that case, *Estate of Malkin*, Judge Marcia Cooke held on summary judgment that the policy there also lacked insurable interest under Delaware law, which opinion was also affirmed by the Eleventh Circuit.[4]

Fast forward to the present day. Pacific Life received a death claim on the Policy from U.S. Bank, investigated, concluded the Policy lacked insurable interest, and brought this suit seeking a declaration that the Policy is void *ab initio* for lack of insurable interest under Delaware law. As the insurer did in *Malkin*, Pacific Life sued U.S. Bank in the jurisdiction where the insured lived—Florida. But now—after multiple judges in the Southern District of Florida have found on summary judgment that Coventry-procured policies lack insurable interest under Delaware law and after those rulings were affirmed on appeal—U.S. Bank contends that it is *not* subject to jurisdiction where the insured lived and that litigating this case in, as U.S. Bank put it, "the most natural forum" would violate the Due Process Clause of the Constitution.

Respectfully, this is procedural gamesmanship at its worst. There is personal jurisdiction over U.S. Bank in Florida because this case is about the validity of a life insurance policy U.S. Bank owns that insures the life of a Floridian. That alone is a sufficient basis to exercise specific jurisdiction over U.S. Bank. But there is more. U.S. Bank, either individually or through its agents, routinely reached into Florida to monitor Ms. Weiser's health over the past fifteen years to keep tabs on its wager and to learn of her death. And when Ms. Weiser passed, U.S. Bank had its agents reach back into Florida to obtain Ms. Weiser's death certificate from the Florida Bureau of Vital Statistics so U.S. Bank could submit the death certificate to Pacific Life and cash in on the wager. That is also sufficient to confer jurisdiction over U.S. Bank. But there is more. Starting in 2001, U.S. Bank entered into a series of Origination Agreements with Coventry and

---

[4] *Estate of Malkin*, 379 F. Supp. 3d 1263 (S.D. Fla. 2019) (Cooke, J.), *aff'd*, 998 F.3d 1186 (11th Cir. 2021).

AIG in furtherance of which Coventry and its agents financially induced seniors to allow Coventry to wager on their lives. U.S. Bank agreed to assist Coventry and AIG in this enterprise, and the co-conspirators expected that the enterprise would involve financial inducements to seniors in Florida since Florida was (and is) home to many of the nation's seniors. This is yet another separate basis to exercise personal jurisdiction over U.S. Bank. In short, U.S. Bank is subject to this Court's jurisdiction, and the only reason U.S. Bank is singing a different tune now is because Your Honor and Judge Cooke have already found the Coventry program to be "smoke and mirrors" in thorough and well-reasoned opinions that were affirmed on appeal.

For the reasons set forth above, there is personal jurisdiction over U.S. Bank here, and exercising that jurisdiction in what U.S. Bank used to tell judges was "the most natural forum" does not offend the Constitution. Nor should this Court give credence to U.S. Bank's request for abstention in favor of its duplicative lawsuit filed in California *four months* after the present action. Rather, the first-filed rule counsels that this Court should maintain the present action (and the second-filed action should be dismissed). Moreover, since the California Action is in federal court, the *Ameritas* abstention doctrine is inapplicable, but even if those abstention factors were considered, they weigh heavily in favor of maintaining the present, first-filed action.

Accordingly, this Court should deny U.S. Bank's motion to dismiss, or, in the alternative, allow Pacific Life to conduct limited jurisdictional discovery as to the issues raised herein.

## BACKGROUND

### A.    The Coventry STOLI Scheme

This litigation concerns a policy that was procured through Coventry's now-notorious STOLI program, designed to use Delaware statutory trusts administered by a Delaware trustee to generate hundreds (if not thousands) of Delaware STOLI policies on the lives of senior citizens across the country. U.S. Bank, AIG, and Coventry entered into a series of contracts, known as

the "Origination Agreements," with the purpose of using Delaware Statutory Trusts to originate multi-million dollar life insurance policies on the lives of senior citizens.[5]

This STOLI scheme worked as follows: Using its nationwide network of brokers, Coventry identified senior citizens that fit AIG's criteria. Am. Compl. ¶¶ 34-40. Once identified, Coventry procured these policies with the expectation of selling them two years later to AIG through U.S. Bank. *Id.* ¶¶ 41-48. To procure the policies, Coventry would have a Delaware statutory trust created in the insured's name administered by Coventry's hand-picked trustee, Wilmington Trust Company. *Id.* ¶ 43. The trust would apply for a life insurance policy as the policy's owner and beneficiary. *Id.* ¶ 41. A sub-trust to the initial trust was also created. *Id.* ¶ 42. The trust transferred all assets to the sub-trust, including all future interests in any life insurance policy. *Id.* The sub-trust would then enter into a short-term, non-recourse "loan" to pay the premiums for the policy collateralized only by the policy the loan was issued to create. *Id.* ¶¶ 46-47. The "loan" was a sham—stacked with excessive interest and fees, and maturing shortly after a policy's contestability period expired. *Id.* The insured had no obligation to repay the loan and, in fact, the "loan" was designed to discourage repayment so Coventry could seize the policy as the short-term loan matured shortly after the policy's two-year contestability period expired. *Id.*

Under the Origination Agreements, Coventry agreed to sell to AIG, and AIG agreed to buy from Coventry, all policies that met AIG's criteria. *Id.* ¶ 17. For its part, U.S. Bank agreed to serve as AIG's and Coventry's agent in various capacities such as securities intermediary to Coventry, securities intermediary to AIG, fiscal agent, and trustee of a Delaware titling trust used by Coventry to pool all of the STOLI policies it originated for AIG. *Id.* In these roles, U.S. Bank aided and abetted Coventry's and AIG's scheme targeting senior citizens across the country

---

[5] *Malkin*, No. 14-cv-62610-BLOOM/VALLE, Dkt. 64-1 (S.D. Fla.).

(including, of course, in Florida, where many of the nation's seniors live).

Put simply, U.S. Bank, Coventry, and AIG entered into the Origination Agreements to procure and originate high-value life insurance policies that were intended, from the start, to be sold to AIG and to be held, on behalf of AIG, through Delaware trusts for which U.S. Bank was trustee and securities intermediary. AIG created the demand for these policies, so Coventry needed to create the supply. To do so, Coventry devised its scheme with the help of U.S. Bank to increase the number of high-value life insurance policies for transfer to AIG. *See Sun Life v. U.S. Bank*, 369 F. Supp. 3d 601, 616 (D. Del. 2019) ("*Sol*") ("Coventry, with the help of U.S. Bank, established and directed a program to increase the number of high-value life insurance policies available on the secondary market."); *U.S. Bank v. Sun Life*, 2016 WL 8116141, at *2 (E.D.N.Y. Aug. 30, 2016) ("*Van de Wetering*") ("U.S. Bank has been involved in the conveyance from Coventry to AIG of approximately 3,000 policies with a face value of several billion dollars.").

### B.    The Application And Issuance Of The Weiser Policy.

In December 2005, Pacific Life received an application for a $20 million policy (i.e., the Policy) insuring the life of a 72-year-old Florida resident named Judith Weiser. Am. Compl. ¶¶ 34-35. The application identified a Delaware statutory trust, the Judith A. Weiser 2005 Family Trust (the "Trust"), as the initial owner and beneficiary of the Policy, with Wilmington Trust Company serving as its trustee. *Id*. ¶¶ 37-38. The application listed the Trust's address as being at 1100 N. Market Street, Wilmington, Delaware, which was the address of its trustee, Wilmington Trust Company. *Id*. ¶ 54. The proposed insured (Ms. Weiser) signed the application in Miami, Florida. *Id*. ¶ 39. The proposed owner (Wilmington Trust Company as trustee for the Trust) signed the application in Wilmington, Delaware. *Id*. ¶ 56. Pacific Life subsequently issued the Policy for delivery to its owner, the Trust, at its trustee's Wilmington, Delaware address, *id*. ¶ 22, and the Trust signed the Policy Delivery Receipt in Wilmington, Delaware, *id*. ¶ 54.

5

On September 4, 2008, Pacific Life received and processed a request to transfer the ownership and beneficiary of the Policy from the Trust to U.S. Bank, as securities intermediary. *Id.* ¶ 49. Since acquiring the Policy in 2008, U.S. Bank—either individually or through an agent—maintained contact with Ms. Weiser, her family, and her physicians in Florida to monitor her health and track whether she had died. *Id.* ¶ 13.

On October 28, 2022, Ms. Weiser died in Florida. *Id.* ¶ 51. Thereafter, U.S. Bank—either individually or through an agent—contacted the Florida Bureau of Vital Statistics to obtain a copy of Ms. Weiser's death certificate so U.S. Bank could submit a claim to Pacific Life for the Policy's death benefit. *Id.* ¶ 14. On December 23, 2022, using that death certificate, U.S. Bank submitted a claim for the Policy's death-benefit proceeds on Ms. Weiser's life. *Id.* ¶ 52.

### C.     This Litigation And U.S. Bank's Motion To Dismiss.

On January 23, 2023, Pacific Life filed the instant lawsuit seeking a declaration that the Policy is void *ab initio* as an illegal human life wager lacking insurable interest under Delaware law and that Pacific Life therefore does not have to pay the death claim. Pacific Life filed this case in Florida where the insured lived—instead of Delaware whose laws govern the Policy—in part because U.S. Bank had previously taken the position that U.S. Bank was *not* subject to personal jurisdiction in Delaware in STOLI cases challenging Delaware policies where the insured lived elsewhere. Instead, U.S. Bank contended that it should be sued in such cases in the jurisdiction where the underlying insured lived, which U.S. Bank referred to as "the most natural forum." Ex. A. Pacific Life was therefore surprised when, on April 20, 2023, U.S. Bank moved to dismiss this action for lack of personal jurisdiction.

On May 19, 2023, Pacific Life amended its complaint to add additional allegations. In response, U.S. Bank did two things. First, on June 8, 2023, U.S. Bank filed a parallel lawsuit against Pacific Life in California, which was "snap" removed to federal court the next day (the

"California Action"). *See U.S. Bank v. Pacific Life*, No. 8:23-cv-01020 (C.D. Cal.). Second, U.S.

Bank renewed its motion to dismiss Pacific Life's amended complaint in this Court.

## ARGUMENT

## I.  THIS COURT HAS PERSONAL JURISDICTION OVER U.S. BANK.

The question of personal jurisdiction "involves a two-part analysis." *Advanced Bodycare Solutions v. Malone Int'l*, 514 F. Supp. 2d 1326, 1328 (S.D. Fla. 2007). The court must first determine whether the long-arm statute is satisfied and then whether the exercise of personal jurisdiction comports with constitutional due process. *Id*. at 1329. Both conditions are met here.

### A.  There Is Jurisdiction Over U.S. Bank Under Florida's Long-Arm Statute.

Florida's long-arm statute confers specific jurisdiction over nonresidents for causes of action arising from: (1) "contracting to insure" a Florida resident, Fla. Stat. § 48.193(1)(a)(4); (2) "operating, conducting, engaging in, or carrying on a business or business venture" in Florida, *id*. § 48.193(1)(a)(1); or (3) "[c]ommitting a tortious act within" Florida, which can be accomplished either "personally or through an agent," *id*. § 48.193(1)(a)(2). The test for whether a claim "arises from" these activities is lenient: There need only be a "direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the action that falls under the long-arm statute." *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 10 (1st Fla. DCA 2000) (cleaned up). These subsections provide three independent bases for exercising long-arm jurisdiction over U.S. Bank here.

#### 1.  There Is Specific Jurisdiction Over U.S. Bank In This Case Because U.S. Bank "Contracted To Insure" The Life Of A Floridian.

U.S. Bank is subject to personal jurisdiction under § 48.193(1)(a)(4) of the long-arm statute, which authorizes jurisdiction over nonresidents who "[c]ontract[] to insure a person, property, or risk located within this state at the time of contracting."

This Court has long recognized that a defendant "contracting to insure any person, property, or risk" need not itself be an insurance company, but can instead be—like U.S. Bank here—an owner of a policy insuring someone else. *See Lincoln Ben. Life Co. v. Joanne Bauer Irrevocable Life Ins. Tr. 12-2-2005*, 2013 WL 24590, at *3 (M.D. Fla. Jan. 2, 2013) (finding personal jurisdiction over out-of-state trustee of trust-owner of alleged STOLI policy issued on the life of a Floridian); *Principal Life Ins. Co. v. Mayer for Mignon Kopel Life Ins. Tr.*, 2009 WL 10668947, at *3 (S.D. Fla. Dec. 15, 2009) (applying § 48.193(1)(a)(4) to a nonresident STOLI promoter who caused a STOLI policy to be issued on the life of a Floridan).

Courts across the country have likewise reached the same conclusion when construing other states' identical long-arm provisions. *See, e.g.*, *In re Flint Water Cases*, 2018 WL 1638758, at *4 (E.D. Mich. Apr. 5, 2018) (engineering-services company "[c]ontract[ed] to insure" in Michigan by obtaining insurance for its affiliate and affiliate's employees in Michigan); *Cornell & Co. v. Home Ins. Companies*, 1995 WL 46618, at *3 (E.D. Pa. Feb. 6, 1995) (insurance broker who was negligent in obtaining insurance for a Pennsylvania resident was subject to the "[c]ontract[ing] to insure" provision of Pennsylvania's long-arm statute).

Here, jurisdiction is proper under § (1)(a)(4) of Florida's long-arm statute because U.S. Bank is an out-of-state entity that contracted to insure the life of Ms. Weiser. From September 2008 until Ms. Weiser's death in October 2022, U.S. Bank was a party to the insurance contract as the Policy's owner, and Ms. Weiser lived in Florida. Thus, the person U.S. Bank contracted to insure was located in Florida at the time of contracting. Pacific Life's claims arise from this activity because Pacific Life claims that the Policy is void *ab initio* for lack of insurable interest.

## 2. There Is Specific Jurisdiction Over U.S. Bank In This Case Because U.S. Bank "Engaged In Business" In Florida.

Another basis for exercising jurisdiction over U.S. Bank is § 48.193(1)(a)(1) of Florida's

8

long-arm statute, which confers jurisdiction over a nonresident for causes of action arising from "operating, conducting, engaging in, or carrying on a business or business venture" in Florida. Specific jurisdiction exists because (i) U.S. Bank engaged in business in Florida by owning a policy insuring the life of a Floridian and by perpetuating the wager on her life by continuing to pay the premium, by communicating with Ms. Weiser and/or her family to monitor her health and thus the status of its wager, and by trying to cash in on that wager by reaching into Florida to obtain her death certificate, and because (ii) Pacific Life's claims arise from that activity.

**First**, U.S. Bank is the record owner of a policy insuring the life of a Floridian. In this regard, U.S. Bank reached into Florida to gamble on the life of a citizen of this State. It also monitored the insured while the Policy was in force to determine how soon she would die so it could make a claim shortly thereafter. Am. Compl. ¶ 13. Then, upon Ms. Weiser's death, U.S. Bank again reached into Florida to obtain a copy of her death certificate from the Florida Bureau of Vital Statistics so it could obtain the death benefit from Pacific Life. *Id.* ¶ 14.[6]

**Second**, Pacific Life's claims arise from U.S. Bank's business activities because there is a "direct affiliation, nexus, or substantial connection" between these activities and claims. *Glovegold*, 791 So. 2d at 10. Indeed, everything that U.S. Bank did with respect to the Policy was done in furtherance of the wager and to capitalize on the death of a Floridian. Through this

---

[6] In support of its motion to dismiss, U.S. Bank attaches an affidavit by Christopher J. Nuxoll, a Vice President at U.S. Bank, who says that "[a]t no time did [U.S. Bank] have any contact with Judith Weiser, her family, her estate, or any other individual or entity in Florida respecting the Policy, or the payment of the Policy proceeds," and "[a]t no time did [U.S. Bank]" take any action within Florida to monitor, service or maintain the Policy." ECF 57-1 ¶¶ 10-11. This denial appears to be based on the meritless notion these actions do not count because they were undertaken by U.S. Bank's *agents*—an allegation that U.S. Bank does not deny. In any event, this Court need not consider U.S. Bank's self-serving affidavit on a motion to dismiss. *See Pierson v. Orlando*, 619 F. Supp. 2d 1260, 1282 n.35 (M.D. Fla.2009) (excluding self-serving, exculpatory affidavit on motion to dismiss); *Estate of Miller v. Toyota*, 2007 WL 4482589, at *3 (M.D. Fla. Dec.18, 2007) (excluding affidavit on a motion to dismiss because the issue it concerned was fact-intensive and would likely require some degree of discovery).

litigation, Pacific Life seeks to prevent that illegal collection of death-benefit proceeds.

> **3.** **There Is Jurisdiction Over U.S. Bank Because Its Co-Conspirators Financially Induced Ms. Weiser In Florida.**

Florida also recognizes that a defendant may subject itself to jurisdiction under the long-arm statute by virtue of its role as a co-conspirator in a civil wrong with other Florida actors. *See* Fla. Stat. § 48.193(1)(a)(2) (conferring specific jurisdiction over nonresident for action arising from "[c]ommitting a tortious act within" Florida, which can be accomplished either "personally or through an agent"). Where "a civil conspiracy to commit tortious acts has been successfully alleged," and "some of those acts are alleged to have been accomplished within the state of Florida . . . every act and declaration of each member of the conspiracy [are] the act and declaration of them all." *Wilcox v. Stout*, 637 So.2d 335, 337 (Fla. 2d DCA 1994) (affirmed by *Execu-Tech Business Sys., Inc. v. New Oji Paper Co. Ltd*, 752 So. 2d 582, 586 (Fla. 2000)).[7] Pacific Life's allegations satisfy the *Wilcox* test and thus provide another basis for jurisdiction.

Here, from 2001 through 2013, U.S. Bank, Coventry, and AIG were parties to the Origination Agreements, through which these entities operated a nationwide human life wagering enterprise targeting seniors throughout the country and especially in Florida—the state with one of the highest per capita concentrations of senior citizens.[8] *See JES Properties, Inc. v. USA Equestrian, Inc*., 253 F. Supp. 2d 1273, 1279 (M.D. Fla. 2003) ("It is only in rare cases that a plaintiff can establish a conspiracy by showing an express agreement. Most conspiracies are inferred from the behavior of the alleged conspirators."); *Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999) (rejecting defendant's contention that heightened

---

[7] Pacific Life acknowledges the co-conspirator test set out in *Posner v. Essex Ins. Co*., 178 F.3d 1209, 1217 (11th Cir. 1999), and meets that standard, but recognizes that in *Execu-Tech*, the Florida Supreme Court reversed the decision relied on by *Posner* and affirmed the *Wilcox* test.

[8] *65 & Older Population Grows Rapidly as Baby Boomers Age*, U.S. Census Bureau (June 25, 2020), https://www.census.gov/newsroom/press-releases/2020/65-older-population-grows.html.

detail is necessary for alleging conspiratorial agreement and deeming agreement element met upon naming of alleged conspirators). By entering into this agreement, U.S. Bank understood it was furthering an enterprise through which U.S. Bank would assist Coventry in originating policies for Coventry and AIG on the lives of Florida seniors. So Coventry's act of reaching into Florida to solicit and induce Ms. Weiser is attributable to U.S. Bank for purposes of jurisdiction. *Wilcox*, 637 So. 2d at 337; *see also AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009) (finding personal jurisdiction over Delaware co-conspirators to STOLI scheme where "at least one act in furtherance" of the conspiracy was committed in Florida); *Lincoln Nat'l Life Ins. Co. v. Griffin*, 2009 WL 10668502, at *1 (S.D. Fla. May 12, 2009) (finding personal jurisdiction over trustee that "alleged to have [not] made any specific contacts with Florida" where trustee "participated with others to carry out an unlawful STOLI scheme," some of the acts of which in furtherance of the scheme are alleged to have occurred in Florida).

## B.   This Court's Exercise Of Personal Jurisdiction Is Constitutional.

Having satisfied Florida's long-arm statute, the Court must also satisfy itself that exercising jurisdiction over U.S. Bank comports with constitutional due process requirements. "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (cleaned up).

### 1.   U.S. Bank's Ownership Of A Policy Insuring The Life Of A Floridian Is Sufficient To Establish Minimum Contacts With Florida.

The "minimum contacts" requirement is met if (1) the contacts relate to the claim, (2) U.S. Bank purposefully availed itself of the privilege of conducting business in Florida, and (3)

the contacts are such that U.S. Bank could reasonably anticipate being haled into Florida court. *Smolinski v. Continental Airlines*, 2000 WL 1100106, at *2 (S.D. Fla. July 25, 2000).

These elements are met here: First, Pacific Life's claims arise out of and relate directly to the Policy U.S. Bank owns that insured a Florida life. Second, U.S. Bank purposefully availed itself of Florida when it acquired a policy insuring the life of a Floridian and perpetuated the illegal wager on her life. Third, there is nothing surprising about haling U.S. Bank into court in Florida to litigate the validity of a policy that it owns insuring the life of a Florida resident.

Indeed, courts in other STOLI cases have opined that owning a life-insurance policy on another individual suffices by itself to establish minimum contacts to subject the owner to personal jurisdiction in the insured's home forum. For example, the *Lincoln* court suggested that because Wells Fargo, as securities intermediary, owned a STOLI policy on the life of a New Jersey resident, Wells Fargo could for that reason alone be subject to personal jurisdiction in New Jersey. *Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*, 2017 WL 6539244, at *3 (D.N.J. Dec. 20, 2017) ("emphasiz[ing] the unique nature of a life insurance policy that takes a direct interest in and guarantees the life of an individual"). And in *Reassure America Life Ins. Co. v. Midwest Resources, Ltd.*, 721 F. Supp.2d 346 (E.D. Pa. 2010), the court "conclude[d] that defendant [a STOLI investor] purposefully directed its activities at this district by purchasing an interest in the insurance policy that is the subject of this action, which was issued in Pennsylvania and insured the life of a Pennsylvania resident, and by maintaining subsequent contacts with Pennsylvania residents in furtherance of its interest in the policy." *Id*. at 349. Similarly, in *McGee v. International Life Insurance Company*, the United States Supreme Court held that an out-of-state insurer was subject to personal jurisdiction in California and had sufficient contacts with California based on its issuance of a life insurance policy to a California

resident, despite the fact that the company had "never solicited or done any insurance business in California apart from the policy involved here." 355 U.S. at 222–23.

In fact, U.S. Bank's own course of conduct shows that exercising jurisdiction over U.S. Bank in the state where the insured lived is not unconstitutional because U.S. Bank routinely contends that the state where an insured resides is *the most appropriate forum* for litigating STOLI cases. For example, in *Barotz*, an estate sought to recover death benefit proceeds on a STOLI policy procured through Coventry that was paid to U.S. Bank as securities intermediary in violation of Delaware's insurable interest statute. *Estate of Barotz v. Vida*, 2022 WL 16833545, at *1 (D. Del. Nov. 9, 2022). In response, U.S. Bank moved to dismiss, arguing that Delaware lacked personal jurisdiction over it and that the dispute should proceed in New York where the insured resided. Ex. B, U.S. Bank Br., *Barotz*, No. N20C-05-144, Dkt. 10 at 15 (Del. Super. Ct. July 20, 2020). Likewise, in *Wilhelm*, U.S. Bank argued there was no jurisdiction over U.S. Bank in Delaware in connection with a policy that lacked insurable interest under Delaware law because the insured lived in California and, according to U.S. Bank, that made California "the most natural forum" to resolve the dispute. Ex. A. This was similar to U.S. Bank's argument in *Garrett*, where U.S. Bank again sought to dismiss a STOLI case filed outside of the state where the underlying insured lived. Ex. C, U.S. Bank Br., *Estate of Garrett v. ITM TwentyFirst et al.*, No. 3:22-cv-00089, Dkt. 30 at 26 (D. Conn. July 11, 2022). And when U.S. Bank files its own preemptive STOLI lawsuits, U.S. Bank typically files those suits in the state where the underlying insured lived. *See, e.g.*, *Van de Wetering*, 2016 WL 8116141, at *1.[9]

---

[9] The other two major securities intermediaries in the STOLI space also regularly contend that the state where an insured resided is the proper forum for challenging a STOLI policy. *See, e.g.*, Wells Fargo Br., *Sun Life v. Wells Fargo*, No. 3:21-cv-9959, Dkt. 6 at 25 (D.N.J. June 21, 2021) ("*Fruchter*") (arguing that state where the insured resided, New York, was appropriate forum to litigate validity of STOLI policy); Am. Compl., *Wilmington Trust v. Lincoln Benefit Life Co.*,

Respectfully, U.S. Bank had it right the first time: U.S. Bank can be sued in STOLI cases where the underlying insureds resided without violating the Constitution. U.S. Bank agreed to enter into an insurance contract insuring the life of a Floridian. U.S. Bank (or its agents) reached into Florida to monitor Ms. Weiser's health and learn of her death. And after she died, U.S. Bank directed its agents to reach back into Florida to request and obtain Ms. Weiser's death certificate from Florida's Bureau of Vital Statistics, which U.S. Bank then submitted to Pacific Life in an attempt to cash in on the wager on Ms. Weiser's life. And, of course, many years before Coventry used Ms. Weiser as a tool to manufacture a policy for AIG, U.S. Bank entered into the Origination Agreements with Coventry and AIG to assist Coventry in doing just that, knowing full well that it would involve a substantial number of Florida senior citizens.

Presented with a similar situation to the one at hand, the Superior Court of New Jersey held that the purchaser of a beneficial interest in a New Jersey resident's life insurance policy was subject to personal jurisdiction in New Jersey because the insured's residence was in New Jersey and the purchaser "maintained contact with [the insured's] New Jersey physicians" and assumed a continuing obligation to pay the insured's insurance premiums. *Smith v. Life Partners, Inc.*, 2007 WL 2847400, *13–15 (N.J. Super. Ct. App. Div. Oct. 3, 2007). Likewise, here, discovery will reveal that U.S. Bank routinely (either itself or through agents) reached into Florida to communicate with Ms. Weiser, her family members, and her physicians to monitor her health and assess whether it was in U.S. Bank's financial interest to maintain the policy.

### 2.    Traditional Notions Of Fairness And Justice Are Not Offended.

Once minimum contacts are established, as they have been here, U.S. Bank "has a much higher hill to climb" and must make a "compelling case" that litigation in the forum state would

2018 WL 4959195 (S.D. Fla. Aug. 14, 2018) ("*Matz*") (seeking declaration that at-issue policy issued on the life of a Floridan was issued with valid insurable interest).

be unreasonable or unfair in order to avoid jurisdiction. *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 325 (3d Cir. 2007) (citing *Burger King*, 471 U.S. at 477). The factors affecting the "fair play and substantial justice" requirement are (i) the burden of defending the suit in Florida, (ii) the forum's interest in adjudicating the suit, (iii) the plaintiff's interest in obtaining relief, (iv) the interests of and efficiency in the interstate judicial system, and (v) "interests of the states in furthering shared substantive policies." *Posner*, 178 F.3d at 1221. These due process considerations only bolster the propriety of this Court's jurisdiction over U.S. Bank here.

 ***First***, litigating in Florida will not burden U.S. Bank. U.S. Bank is a national bank doing business across the country, and any burden "is mitigated by 'modern methods of transportation and communication' . . . as well as by the fact that [defendant has demonstrated] more than isolated contacts with Florida." *Posner*, 178 F.3d at 1221. U.S. Bank's objection to jurisdiction here has nothing to do with convenience or fairness and everything to do with avoiding this Court's prior substantive rulings. But there is nothing unfair about subjecting a national bank to jurisdiction in the states in which it seeks to wager on the lives of senior citizens.

 ***Second***, Florida has an interest in rooting out an illegal STOLI policy issued on the life of a Florida resident. Although the Florida Supreme Court held in 2016 that there was a loophole in Florida's insurable interest statute allowing certain types of STOLI, Florida's legislature legislatively overturned that decision and closed that loophole the following year by enacting strong anti-STOLI rules.[10] So Florida has a public policy interest in having its courts apply

---

[10] *Wells Fargo Bank, N.A. v. Pruco Life Ins. Co*., 200 So. 3d 1202, 1206 (Fla. 2016) (holding that STOLI (as it existed in this case) was legal in Florida due to hyper-technical reading of Florida's insurable interest statute and that therefore an insurer could not challenge such STOLI after the two-year contestability period expired). Florida's legislature overturned *Pruco* the following year with amendments to Florida's Viatical Settlements Act. FLA. H.R., LEGIS. FINAL BILL ANALYSIS, H.B. 1007, at 15 (2017) (explaining that the amendments were "[i]n response to the Pruco case from the Florida Supreme Court"); Fla. Stat. § 626.99289 (2017)

Delaware's anti-STOLI law to invalidate STOLI policies like the one at issue here.

*Third*, Pacific Life has the right, as the plaintiff, to choose its forum. Here, Pacific Life's forum choice was not only its prerogative, but also reasonable given that Pacific Life is seeking a determination on the validity of a policy insuring the life of a Florida resident, particularly since U.S. Bank has previously taken the position that the courts of the state where the underlying insured resided are "the most natural forum" to litigate STOLI cases.

*Fourth*, the interstate judicial system's interest in efficiency will be promoted by having this case litigated in Florida. This litigation concerns a policy insuring the life of a Floridian, and her family members, the insurance producer, and other witnesses reside in Florida. The potential difficulty of haling these family members and other witnesses into court across the country similarly supports this Court's exercise of personal jurisdiction over U.S. Bank.

*Finally*, the states' shared interest in furthering social policies will be advanced by having this case litigated in Florida. As noted *supra*, Florida's legislature has recently prohibited STOLI and thus has a strong interest in eliminating STOLI policies.

> **C.** **To The Extent This Court Is Not Satisfied That Personal Jurisdiction Exists Over U.S. Bank, Jurisdictional Discovery Should Be Permitted.**

To the extent this Court is not satisfied with the propriety of its jurisdiction over U.S. Bank, Pacific Life respectfully submits that it has shown a good faith basis on which to conduct discovery to obtain information bearing on the nature and extent of U.S. Bank's contacts with Florida. "Eleventh Circuit precedent indicates that jurisdictional discovery is highly favored before resolving . . . motions to dismiss for want of personal jurisdiction." *Sierra Equity Group v. White Oak Equity Partners*, 2008 WL 1771857, at *1 (S.D. Fla. Apr. 15, 2008). Accordingly, to the extent the Court is not satisfied that it has jurisdiction over U.S. Bank, Pacific Life

---

(providing that transactions undertaken in furtherance of STOLI are "void and unenforceable"); Fla. Stat. § 626.99291 (2017) (allowing insurers to challenge STOLI post-contestable).

respectfully moves this Court for an opportunity to conduct jurisdictional discovery.

## II.     THIS COURT SHOULD NOT ABSTAIN FROM THIS ACTION.

As a last ditch effort to avoid this Court's jurisdiction, U.S. Bank argues that this Court should abstain from adjudicating this action in favor of U.S. Bank's duplicative, second-filed California action. Not so. ***First***, the first-filed rule counsels that this Court should maintain this action (and the second-filed action should be dismissed). ***Second***, U.S. Bank points to the *Ameritas* abstention doctrine, which is neither applicable nor weighs in favor dismissal here.

### A.     The First-Filed Rule Holds That This Court Should Preside Over This Case.

As an initial matter, the first-filed rule counsels that this Court should maintain this action and that U.S. Bank's second-filed California Action should be dismissed. The first-to-file rule "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 94-95 (9th Cir.1982). Put another way, "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit." *Id*. at 95; *see also Manuel v. Convergys Corp*., 430 F.3d 1132, 1135 (11th Cir. 2005) ("[T]here is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."). While the first-filed rule will not be applied where a court finds "compelling circumstances" supporting its abrogation, *see id*. at 1135, no such circumstances exist here.

U.S. Bank contends that Pacific Life "raced to the courthouse" to preempt a lawsuit from U.S. Bank, and thus suggests that departure from the first-filed rule may exist for this reason. But at no point did U.S. Bank ever notify or indicate to Pacific Life that it would file suit to seek enforcement of the policy. The Eighth Circuit's decision in *Northwest Airlines v. Am. Airlines*, 989 F.2d 1002 (8th Cir. 1993) is instructive. In that case, "Northwest was on notice that

American was at least considering filing suit against Northwest" based on a letter sent by American to Northwest. *Id*. at 1007. Northwest subsequently filed a declaratory judgment action in Minnesota. *Id.* Six weeks later, American filed suit in Texas. *Id.* The Eighth Circuit affirmed the trial court's conclusion that "Northwest, in filing first, had neither acted in bad faith nor raced to the courthouse to preempt a suit by American." *Id.* The court reasoned that American's letter, although giving notice that American was considering a lawsuit, "gave no indication that a lawsuit was imminent." *Id.* The court noted that—given the six-week time difference from when Northwest filed its declaratory judgment action and American filed its suit, "one might infer that American's lawsuit was not truly contemplated until after Northwest had filed its action." *Id.*

Whereas in *Northwest Airlines* there was some notice of a potential lawsuit, here, there was none. U.S. Bank never communicated any intent to seek enforcement of the policy. Additionally, U.S. Bank filed its lawsuit in California **almost four months** after Pacific Life initiated this action, which demonstrates that U.S. Bank did not contemplate filing a lawsuit to seek enforcement of the policy until after Pacific Life initiated this action.

Additionally, the mere fact that Pacific Life seeks a declaratory judgment does not warrant departure from the first-filed rule. Indeed, "[i]nsurers commonly use declaratory judgment actions to determine coverage questions, while simultaneously avoiding exposure to substantial bad faith damages." *Prudential Ins. Co. v. Doe*, 140 F.3d 785, 790 (8th Cir. 1998). Put simply, Pacific Life acted in good faith by filing the present action, and had no other avenue to seek to free itself from the unlawful agreement other than by way of declaratory relief, and thus this Court should retain this action pursuant to the first-filed rule.[11]

---

[11] This tactic by securities intermediaries and beneficial owners of STOLI policies—filing duplicative lawsuits in jurisdictions perceived to be more favorable—is not new. But courts consistently (and correctly) find that such gamesmanship is improper. *E.g.*, Ex. D, Tr. of

**B.**  **The *Ameritas* Abstention Doctrine Is Inapplicable And, Regardless, Weighs In Favor Of Maintaining This Action.**

U.S. Bank argues that this Court should abstain from adjudicating this action in favor of its second-filed action in California, pointing to the abstention doctrine set forth in *Ameritas*, which holds that a district court has discretion to dismiss a declaratory judgment action in favor of an ongoing state court action that would resolve the entire controversy. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). But this doctrine is inapplicable because the second-filed action brought by U.S. Bank in California is pending in federal court.

Nevertheless, to the event this Court believes that an analysis of the *Ameritas* factors is necessary, consideration of the factors weighs against abstention. In *Ameritas*, the Eleventh Circuit set forth nine factors that a district court should consider: (1) the state's interest in deciding the matter; (2) whether a judgment in the federal action would completely resolve the controversy; (3) whether the declaratory action would clarify the parties' legal relations; (4) whether the federal action amounts to fencing; (5) whether a ruling in the federal action would increase friction between federal and state courts; (6) whether a superior remedy exists; (7) whether underlying facts are important to an informed resolution of the matter; (8) whether the state court is better situated than the federal court to evaluate those facts; and (9) the nexus between the underlying issues and state law/policy. 411 F.3d at 1331.

Here, these factors establish the propriety of maintaining this action. (1) Florida has a greater interest in adjudicating the validity of a policy insuring the life of a Floridan than

---

Proceedings on Mot. to Dismiss, *Viva Capital 3, L.P. v. Garrett*, No. 22-CV-01911 (Ca. Sup. Court. Feb. 17, 2023) (staying second-filed action brought by beneficial owner pending outcome in first-filed STOLI action ); Ex. E, Order, *U.S. Bank, v. Barotz*, No. 55198/2020, NYSCEF No. 42 (N.Y. Sup. Ct., Sept. 3, 2020) (granting motion to dismiss second-filed STOLI action brought by U.S. Bank and beneficial owner); *Sun Life v. Wells Fargo*, 2021 WL 5997986, at *7 (D.N.J. Dec. 20, 2021) ("*Fruchter*") (denying securities intermediary's request to transfer STOLI action to a different district where it had brought a duplicative lawsuit).

California, which has little connection to this litigation other than being the headquarters of Pacific Life. (2) Judgment in this action will settle all claims between the parties, as U.S. Bank's breach of contract and tort claims in the California Action are compulsory counterclaims to the present action. *See* Fed. R. Civ. P. 13(a). (3) This declaratory judgment would resolve the core issue between the parties—i.e., the validity of the Policy. (4) This action is not fencing, because there was no race to the courthouse. U.S. Bank never communicated any intent to seek enforcement of the Policy, and did not even file the California Action until almost ***four months*** after Pacific Life initiated this action. (5) This action will not create friction with the Central District of California, which will recognize the propriety of this Court's jurisdiction and almost certainly dismiss or stay the second-filed action. (6) The better and more logical remedy is maintaining this action, which was filed almost four months before the California one. (7-9) This Court is in a better position to resolve the Policy's validity given that it insured the life of a Floridian, and family members of the insured and the insurance producer reside in Florida.

## <u>CONCLUSION</u>

The illegal human life-wagering scheme that Pacific Life has alleged (and will prove) is connected and jurisdictionally linked to Florida. Any argument by U.S. Bank that it is jurisdictionally isolated from Florida is simply not credible. For these reasons, U.S. Bank's motion to dismiss should be denied, or, in the alternative, Pacific Life should be permitted to conduct limited jurisdictional discovery as to the issues raised herein.

Dated: July 5, 2023                    Respectfully submitted,

                                       */s/ Ashley Gomez-Rodon*
                                       Ashley Gomez-Rodon
                                       Southeast Financial Center
                                       200 South Biscayne Blvd., Ste. 3000
                                       Miami, FL 33131
                                       Phone: (786) 871-3996
                                       Fax: (305) 704-5955
                                       agomez-rodon@cozen.com

                                       Joseph M. Kelleher (*pro hac vice*)
                                       Kara E. Cheever (*pro hac vice*)
                                       Philip J. Farinella (*pro hac vice*)
                                       1650 Market St., Ste. 2800
                                       Philadelphia, PA 19103
                                       Phone: (215) 665-2000
                                       jkelleher@cozen.com
                                       kcheever@cozen.com
                                       pfarinella@cozen.com

                                       **COZEN O'CONNOR P.C.**

                                       *Attorneys for Plaintiff*
                                       *Pacific Life Insurance Company*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing *Memorandum of Law in Support of*

*Plaintiff's Opposition to Defendant's Motion to Dismiss* was electronically filed with the Clerk

of the Court using CM/ECF.

Dated: July 5, 2023

/s/ Ashley Gomez Rodon
Ashley Gomez-Rodon