# EXHIBIT B

**EFiled:  Jul 20 2020 04:20PM EDT**
**Transaction ID 65782685**
**Case No. N20C-05-144 PRW CCLD**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ESTATE OF MARTHA BAROTZ, by | ) | |
| its Executor, PETER BAROTZ, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. N20C-05-144 PRW |
| | ) | CCLD |
| v. | ) | |
| | ) | |
| U.S. BANK, N.A., as Securities | ) | |
| Intermediary, and VIDA LONGEVITY | ) | |
| FUND, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR STAY FOR *FORUM NON CONVENIENS*, OR, IN THE ALTERNATIVE, TO DISMISS DEFENDANT U.S. BANK, N.A., AS SECURITIES INTERMEDIARY FOR LACK OF PERSONAL JURISDICTION

David P.  Primack (#4449)
MCELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
300 Delaware Ave., Suite 770
Wilmington, DE 19801
Telephone: (302) 300-4512
Facsimile: (302) 654-4031
E-mail: dprimack@mdmc-law.com

*Counsel for Defendants*

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ............................................................... ii

PRELIMINARY STATEMENT ......................................................... 1

STATEMENT OF FACTS ................................................................ 4

STATEMENT OF QUESTIONS INVOLVED...................................... 7

ARGUMENT .................................................................................. 7

    I.    THE MOTION TO DISMISS OR STAY FOR FORUM NON
        CONVENIENS SHOULD BE GRANTED......................................... 7

        A.    The New York Action Should Be Regarded As First-
            Filed Or Contemporaneously Filed............................. 9

        B.    The *McWane* Factors And Forum Non Conveniens
            Principles As Well As The *Cryo-Maid* Factors Favor A
            Stay Of This Action .................................................. 10

    II.    IN THE ALTERNATIVE, SECURITIES INTERMEDIARY
        SHOULD BE DISMISSED FROM THIS ACTION FOR
        LACK OF PERSONAL JURISDICTION ...................................... 19

        A.    There Is No General Jurisdiction Over Securities
            Intermediary ............................................................ 21

        B.    There Is No Specific Jurisdiction Over Securities
            Intermediary ............................................................ 22

CONCLUSION .............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Application of Bohlinger*,
  199 Misc. 941 (N.Y. Sup. Ct. 1951) .................................................................12

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ...............................................................................................11

*Audi AG & Volkswagen of Am. v. D'Amato*,
  341 F. Supp. 2d 734 (E.D. Mich. 2004) .............................................................15

*Briley v. Blackford*,
  1990 WL 124341 (S.D.N.Y. Aug. 21, 1990).......................................................12

*Certain Underwriters at Lloyds Severally Subscribing Policy No.
  DP359504 v. Tyson Foods, Inc.*,
  2008 WL 660485 (Del. Super. Ct. Mar. 7, 2008)..............................................10

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..............................................................................................12

*Crosstex Energy Servs., L.P.*,
  2013 WL 6598736 (Del. Super. Ct. Dec. 13, 2013) .........................................8, 9

*Dickerson v. Murray*,
  2015 WL 447607 (Del. Super. Ct. Feb. 3, 2015);
  *Cf. John Hancock Life Ins. Co. of N.Y.*, 357 F. Supp. 217;
  *Sun Life Assur. Co.*, 2018 WL 3805740 .............................................................13

*Gen. Foods Corp. v. Cryo-Maid, Inc.*,
  41 Del. Ch. 474 (1964) ..........................................................................................9

*Gramercy Emerging Mts. Fund v. Allied Irish Banks, P.L.C.*,
  173 A.3d 1033 (Del. 2017) .............................................................................7, 8, 9

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)...............................................................................................15

*IM2 Merch. & Mfg., Inc. v. Tirex Corp.*,
  2000 WL 1664168 (Del. Ch. Nov. 2, 2000) .......................................................17

*In re: Howmedica Osteonics Corp*,
  867 F.3d 390 (3d Cir. 2017) ................................................................................11

*Ison v. E.I. DuPont de Nemours & Co.*,
  729 A.2d 832 (Del. 1999) ..............................................................................8, 9, 14

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
   342 U.S. 180 (1952) ............................................................................7

*Kolber v. Holyoke Shares, Inc.*,
   59 Del. 66 (1965) ...............................................................................9

*Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*,
   2010 WL 2898315 (D. Del. July 2, 2010) ..........................................12

*Martinez v. E.I. DuPont De Nemours & Co.*,
   82 A.3d 1 (Del. Super. Ct. 2012),
   *aff'd*, 86 A.3d 1102 (Del. 2014) ................................................ 15, 17

*McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*,
   263 A.2d 281 (Del. 1970) .................................................................8, 17

*McWane, Inc. v. Lanier*,
   2015 WL 399582 (Del. Ch. Jan. 30, 2015)...........................................8

*Monsanto Co. v. Aetna Cas. & Sur. Co.*,
   559 A.2d 1301 (Del. Super. Ct. 1988) ................................................16

*Nat'l Union Fire Ins.  Co. of Pittsburgh, PA v. Turner Constr. Co.*,
   2014 WL 703808 (Del. Super. Ct. Feb. 17, 2014)...............................14

*Playtex, Inc. v. Columbia Cas. Co.*,
   1989 WL 40913 (Del. Super. Ct. Apr. 25, 1989) ..................................9

*Progressive Cas. Ins. Co. v. Bowman Trailer Leasing, LLC*,
   2018 WL 3853875 (Del. Super. Ct. Aug. 13, 2018)............................12

*South v. Baker*,
   62 A.3d 1 (Del. Ch. 2010) ...................................................................9

## Statutes

10 Del. C. § 3104(c)(1) ............................................................................14

10 Del. C. § 3104(c)(2) ............................................................................14

10 Del. C. § 3104(c)(3) ............................................................................14

10 Del. C. § 3104(c)(4) ............................................................................14

## Other Authorities

## Constitution

N.Y. Const. Art. VI, § 7 ...........................................................................13

## <u>Rules</u>

Superior Court Civil Procedure Rule 12(b)(2) ......................................................19

Defendants U.S. Bank, N.A., solely as Securities Intermediary ("Securities Intermediary") and Vida Longevity Fund, L.P. ("VLF" and, together with Securities Intermediary, the "Defendants"), by and through their counsel, respectfully submit this opening brief in support of their motion to dismiss or, in the alternative, to stay, the action brought by the putative Estate of Martha Barotz (the "Estate"), by and through its alleged Executor, Peter Barotz (the "Executor"), or, in the alternative to dismiss Securities Intermediary for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

This motion primarily asks the Court to dismiss or stay this action in favor of an action involving the same parties that is pending in New York – a jurisdiction that has a greater connection to the parties and which is the only jurisdiction in which the parties can be afforded complete relief in a single proceeding.  To the extent the Court determines that this action should proceed, Securities Intermediary should be dismissed for lack of personal jurisdiction

First and foremost, there is another action pending between the parties in New York that was the first duly filed action that covers all of the parties and matters at issue between the Plaintiff and Defendants.  This action was initially filed against a different defendant, which has been dismissed. Neither Defendant was named or served until after Defendants had filed the proceeding in New York

1

(the "New York Action") against Plaintiff, and served Plaintiff with process in that action. The New York Action is thus the first filed case. After Defendants completed service in the New York Action, Plaintiff amended the complaint in this action to add them as parties. The only named defendant in this action prior to the New York Action was Wells Fargo Bank, sued in a capacity as Securities Intermediary. Not only was the New York Action the first-filed action to include all of the proper parties, it would have been filed well before the filing of this action if not for the fact that New York Court system prohibited such the filing due to the COVID-19 pandemic from March 22, 2020 to May 24, 2020.

Furthermore, the principles underlying *forum non conveniens* dictate that this action should be dismissed or stayed in favor of the New York Action. As the subject insurance policy (the "Policy") insured a New York resident, New York has an interest in having its insurance laws applied to the Policy – which can best be done by a New York court. Furthermore, New York is the only forum that can render full and complete relief. Defendants have several meritorious equitable defenses to the allegations in the Complaint, which this Court has recognized can only be asserted in Chancery Court. Thus, if this action were allowed to proceed, Defendants would have to also litigate the New York Action or would be required to commence a proceeding in Chancery Court to have their equitable defenses heard. The necessity to litigate in two courts can be avoided by dismissing or

staying this action.

Additionally, practical and convenience factors weigh in favor of dismissal or stay of this action. The Plaintiff is located in New York and New York is the likely location of the Plaintiff's records and the records of the insured's. Moreover, Defendants have their offices and records in states other than Delaware. Thus, it is clear that New York, is more convenient than Delaware. Aside from convenience, efficiency also weighs in favor of dismissal based on the piecemeal nature in which this action would need to proceed in Delaware in light of Defendant's equitable defenses. The parties would face unnecessary and undue hardship litigating in Delaware because of the increased cost associated with litigating this dispute in this Court and in the New York Action or in Chancery Court. As such, it is clear that this action should be dismissed or stayed in favor of the New York Action.

To the extent this action is not dismissed or stayed, Securities Intermediary should be dismissed as a party for lack of personal jurisdiction. Securities Intermediary does not maintain any offices in this state, was not established under the laws of this state, and does not conduct the type of business at issue in this state. Furthermore, the allegations that purport to connect this matter to Delaware do not concern Securities Intermediary, nor does Plaintiff allege that Securities Intermediary engaged in any acts in Delaware related to this dispute. As such there

is no general or specific jurisdiction over Securities Intermediary.

## STATEMENT OF FACTS

On April 20, 2006, Pacific Life Insurance Company ("Pac Life") issued the Policy -- life insurance policy no. VF5149922-0, insuring the life of Martha Barotz (the "Insured") in the amount of $8,000,000. First Amended Complaint ("Am. Compl.") at ¶ 17; *See* attached Exh. A at 1.

Martha Barotz's application for the Policy states that the prospective insured was born in New York, resides in New Rochelle, New York, and has a New York driver's license. *Id.,* Exh. A at 28.  The application's medical history was signed by the prospective insured at New Rochelle, New York and by a doctor at New York, New York. *Id.,* Exh. A at 41.  A medical examination was conducted in connection with the application by a doctor in Larchmont, New York, as attested on the application form. *Id.* Exh. A at 1. While the owner of the Policy was a trustee located in Wilmington, the sole trust beneficiary and also the co-trustee of the Trust was the insured's husband who also lived in New York, cite.

On or about May 9, 2009, Securities Intermediary became the Securities Intermediary for the Policy.  Declaration Of Christopher J. Nuxoll In Support Of Defendants Motion To Dismiss Or Stay For *Forum Non Conveniens*, Or, In The Alternative, To Dismiss Defendant U.S. Bank, N.A., As Securities Intermediary For Lack Of Personal Jurisdiction ("Nuxoll Decl.") at ¶ 6.  Subsequent to May 9,

2009, Securities Intermediary's customer, which was the beneficial owner of that Policy, sold its interest to VLF. *Id.* at ¶ 7. Following that transaction, Securities Intermediary continued to serve as securities intermediary but did so solely for the benefit of VLF as it relates to the Policy. *Id.* at ¶ 8.

On or about December 22, 2018, the Insured passed away. Am. Compl. at ¶ 30. The Insured's estate was probated in New York State Surrogate's Court in Westchester County. *See* attached Exh. B. The Estate was established in New York after the death of Martha Barotz, a resident of the State of New York. Am. Compl. at ¶ 1. Mrs. Barotz was at all times relevant a citizen of the State of New York. *Id.* The Executor of the Estate is a resident of Westchester County, New York and a citizen of New York. *Id.* The Estate is a citizen of the State of New York. *Id.*

Securities Intermediary submitted a claim for payment of the Policy's death benefit. Am. Compl. at ¶ 32. On or about January 17, 2019, the Policy's death benefit of $8,005,698.63 was paid to Securities Intermediary, which received the funds solely for the benefit of VLF as beneficial owner. Nuxoll Decl. at ¶ 9. On April 26, 2017, Securities Intermediary promptly credited VLF's account with the full death benefit in the amount of $8,005,698.63. *Id.* at ¶ 10.

On May 25, 2020, Plaintiffs commenced the New York Action against the Estate in New York Supreme Court by filing a summons and complaint. Am.

Compl. at ¶ 34; attached Exh. C.  The New York Action seeks, *inter alia,* a declaration that VLF is the rightful owner of the Policy's death benefit.  *Id.* Service of the Summons and Complaint was effected on the Estate on May 27, 2020. *See* attached Exh. D.

Defendants had previously decided to file the New York Action on April 13, 2020.  *See* attached Exh. E at ¶ 3.  However, in response to COVID-19, New York State's Chief Administrative Judge of the Courts, Lawrence Marks, had issued an order on March 22, 2020, suspending all new filings in the New York Supreme Court (the "March 22 Order").  *See* attached Exh. F.  But for that order, counsel for Defendants would have filed and served the summons and complaint on April 13, 2020. Exh. E at ¶ 4. On May 20, 2020, Judge Marks issued an internal memorandum (the "May 20 Memorandum") that allowed for the filing of new non-essential matters with this Court beginning on May 25, 2020.  *See* attached Exh. G.

Plaintiff commenced this action on May 15, 2020.  *See* Complaint. The Complaint named Wells Fargo Bank, N.A., in a capacity as Securities Intermediary for an unnamed party, as the sole defendant. *Id.*  On or about May 29, 2020, after Defendants commenced the New York Action and effected service of the Summons and Complaint on Plaintiff, Plaintiff amended its complaint to add Defendants.  *See* Am. Compl.  On or about June 5, 2020, Plaintiff voluntarily dismissed Wells Fargo from this action.  *See* attached Exh. H.

## STATEMENT OF QUESTIONS INVOLVED

Should this Court dismiss or stay in favor of a New York Action based on a controversy that has no connection to Delaware, where a New York forum can offer prompt and complete relief?

Should this Court, alternatively, dismiss Securities Intermediary for lack of personal jurisdiction?

## ARGUMENT

The motion to dismiss or stay should be granted based on the *McWane* factors and *forum non conveniens* principles, the *Cryo-Maid* factors and considerations of convenience, comity, efficiency, fairness, and the orderly administration of justice.  The alternative motion to dismiss Securities Intermediary should be granted because the Estate cannot satisfy its burden of establishing person jurisdiction over Securities Intermediary.

## I.   THE MOTION TO DISMISS OR STAY FOR FORUM NON CONVENIENS SHOULD BE GRANTED

The standard for a stay or dismissal under Delaware law based on *forum non conveniens*, where there are two concurrent litigations, begins with assessing which case was filed first (*Gramercy Emerging Mts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1037 (Del. 2017)).  Delaware avoids a "rigid mechanical" first filed rule.  *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 184 (1952).  Instead "Delaware courts have considered the circumstances

7

surrounding the first-filed action in determining if it should receive the deference generally afforded to a first-filed action." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crosstex Energy Servs., L.P.*, 2013 WL 6598736, at *4 (Del. Super. Ct. Dec. 13, 2013) ("*Crosstex*") (granting motion to stay).  When considering whether to afford deference to a lawsuit that is filed first, "Delaware courts usually evaluate a motion to stay using *forum non conveniens* principles." *McWane, Inc. v. Lanier*, C.A. No. 9488-VCP, 2015 WL 399582, at *10 (Del. Ch. Jan. 30, 2015).

If there is no first-filer or both actions are considered contemporaneously filed, courts consider general *forum non conveniens* principles including the *McWane* factors such as, which court is "capable of doing prompt and complete justice, involving the same parties and the same issues" with a view to "considerations of comity and the necessities of an orderly and efficient administration of justice." *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

If this action were deemed to be the first-filed, the *Cryo-Maid* standard is used on a motion to stay or dismiss. *Gramercy*, 173 A.3d at 1044.  The *Cryo-Maid* analysis considers convenience factors: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises. *Ison v. E.I. DuPont de Nemours & Co.*, 729 A.2d 832, 837–38 (Del. 1999); *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 41 Del. Ch. 474, 479, 198 A.2d

681, 684 (1964).  It also considers one-forum efficiency considerations such as: (4) the pendency or non-pendency of a similar action or actions in another jurisdiction; and (5) all other practicalities that would make the trial of the case easy, expeditious and inexpensive in the Delaware forum or elsewhere.  *Gramercy,* 173 A.3d at 1036-37.   In either posture, dismissal for forum non conveniens is appropriate only upon showing of "overwhelming hardship" to the Defendants.  *Kolber v. Holyoke Shares, Inc.*, 59 Del. 66, 69–70, 213 A.2d 444, 446–47 (1965); *Ison,* 729 A.2d at 837–38.

### A.   The New York Action Should Be Regarded As First-Filed Or Contemporaneously Filed

Delaware courts are weary of plaintiffs seeking to win a "race to the courthouse." *See South v. Baker*, 62 A.3d 1, 20-26 (Del. Ch. 2010) (applying a presumption of inadequacy for first-filer plaintiffs' attorneys in shareholder derivative actions); *see also Crosstex*, 2013 WL 6598736, at *4; *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 40913, at *2,*4-*6 (Del. Super. Ct. Apr. 25, 1989).  In *Crosstex*, the court stated that "Delaware courts have declined to give first-filed status to actions filed in a trivially faster manner," and the court considered the circumstances surrounding the technically first-filed action.  *Crosstex*, 2013 WL 6598736, at *4 (internal quotations omitted).  In deciding to defer to the later-filed Texas action, the court placed emphasis on the insured's location as the natural location (and law) for the action.  *Id.*  at *4-5.

9

This action did not originally name VLF or Securities Intermediary as parties. Moreover, once they were named as parties, the New York Action had already been commenced. *Certain Underwriters at Lloyds Severally Subscribing Policy No. DP359504 v. Tyson Foods, Inc.*, I.D. No. 07C-06-255-JEB, 2008 WL 660485, at *2 (Del. Super. Ct. Mar. 7, 2008) ("In *Stepak v. Tracinda Corp.* and in *Joyce v. Cuccia,* the Court of Chancery denied first filed status to the first filed complaint because the complaint was filed with instructions to withhold service in order to conceal the filing from the defendant."). The New York Action was the first action in which all the parties were named, and the first action in which all the necessary parties were served with process. Furthermore, the New York Action would have been filed prior to Plaintiff filing this action against an irrelevant defendant but for prohibitions on filing that were imposed because of the COVID-19 pandemic – a factor that Defendants should not be punished for. Therefore, it would be wrong to afford the Estate any technical advantage associated with suing the wrong party first. Rather, this Court should regard the New York Action as filed first or, at the very least, filed contemporaneously with this action.

**B.    The *McWane* Factors And Forum Non Conveniens Principles As Well As The Cryo-Maid Factors Favor A Stay Of This Action**

10

      1.    *The McWane Factors and General Forum Non Conveniens Principles Weigh In Favor Of A Dismissal, Or, In The Alternative, a Stay Of This Action*

As the New York Action should be regarded as first-filed, or contemporaneously filed, the proper standard under which to determine forum *non conveniens* are the *McWane* factors, which, as noted, include, which court is "capable of doing prompt and complete justice, involving the same parties and the same issues" with a view to "considerations of comity and the necessities of an orderly and efficient administration of justice." *McWane Cast Iron Pipe Corp.,* 263 A.2d at 283. *Forum non conveniens* principles, which also should be analyzed, consider the general convenience of the parties and witnesses and the interest of justice. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013); *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402-03 (3d Cir. 2017).

Determinative in these parallel actions in New York and Delaware, involving the same claims, is New York's interest in regulating its insurance market and affording protections to its residents. "The business of writing insurance has long been recognized as a business affected with a public interest and, therefore, subject to detailed regulation by the state for the protection of the public;" "it is [a] privilege granted by the state subject to the conditions imposed by the state and to its control and supervision." *Application of Bohlinger*, 199

11

Misc. 941, 967, 106 N.Y.S.2d 953, 977 (N.Y. Sup. Ct. 1951); *Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*, Civ. No. 09–506–GMS, 2010 WL 2898315, at *4 (D. Del. July 2, 2010). The Policy insured a New York resident and the parties seeking to lay claim to the Policy's death benefit – the Estate and Executor – are New York residents and citizens. Therefore, New York has a strong interest in seeing this controversy litigated in a local forum. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976); *see also Briley v. Blackford*, No. 89 CIV. 8365 (PNL), 1990 WL 124341, at *4 (S.D.N.Y. Aug. 21, 1990).

Fundamentally, this Court also lacks the power to render prompt and complete justice and resolve all of the claims in this litigation. *Progressive Cas. Ins. Co. v. Bowman Trailer Leasing, LLC*, C.A. No.: N17C-12-333 AML, 2018 WL 3853875, at *3 (Del. Super. Ct. Aug. 13, 2018). Equitable claims and defenses are integral to this action—precluding entitlement claims by family members to the Policy's death benefit. *John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Family Life Ins. Tr.,* 357 F. Supp. 3d 209, 220 (E.D.N.Y. 2018), *aff'd*, 783 F. App'x 89 (2d Cir. 2019). Specifically, *Baum* holds that the defenses of laches, ratification and unclean hands are crucial in cases where an estate is seeking to recover proceeds from a policy that the insured permitted to be transferred to third parties. If this case is not dismissed, Defendants

will raise equitable defenses based on Plaintiff's delay in asserting his and the insured's purported rights to the Death Benefit.

Defendants' equitable defenses can be asserted in the same court in which the New York Action is pending because New York does not maintain a distinction between law and equity. *See* N.Y. Const. Art. VI, § 7. However, as this Court recently recognized, Delaware maintains the distinction between law and equity, and the Delaware Superior Court lacks jurisdiction over equitable claims and defenses. *Perlman, et al. v. Vox Media, Inc.,* 2020 WL 3474143, at *5 (Del Super Ct June 24, 2020); *Sun Life Assurance Co. of Canada v. Wilmington Trust, N.A.*, 2018 WL 3805740, at *3 (Del. Super. Ct. Aug. 9, 2018).

Because Delaware (unlike New York) maintains the distinction between law and equity, and it is a well-settled principle that the Delaware Superior Court lacks subject matter jurisdiction to entertain equitable claims and defenses, the Defendants would be forced to continue to litigate the New York Action or to initiate yet another action in the Delaware Court of Chancery to adjudicate their applicable equitable claims and defenses. *Dickerson v. Murray*, 2015 WL 447607, at *7 (Del. Super. Ct. Feb. 3, 2015); *Cf. John Hancock Life Ins. Co. of N.Y.*, 357 F. Supp. at 217; *Sun Life Assur. Co.*, 2018 WL 3805740, at *3. Significantly, this would impose considerable cost, injustice and inconvenience on the all parties.

13

2.    *The Cryo-Maid Factors Favor A Motion to Dismiss or in Alternate a Stay of the Delaware Action*

To the extent this action is deemed first-filed, the *Cryo-Maid* factors also counsel in favor of a stay or dismissal. Foremost, the Delaware forum is not a convenient forum for this action. Moreover, all other practical considerations point away from Delaware and also counsel in favor of the pending New York Action, as noted, the only forum that can grant complete and prompt adjudication of the right to the Policy's death benefit.

a. *Convenience Factors Disfavor the Delaware Forum*

Delaware has no real connection to the dispute except as the place that the trust that originally owned the Policy was located. *Aranda*, 183 A.3d at 1253. The Trust was formed by Ms. Barotz in New York, and the co-trustee and sole beneficiary of the trust was her son, also in New York. Therefore, the case should be dismissed or, in the alternate, stayed because convenience factors such as the access to proof and witnesses are not available in Delaware, weighing heavily against Delaware. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, 2014 WL 703808, at *4, *6 (Del. Super. Ct. Feb. 17, 2014). Delaware's connection to this controversy is severely attenuated. *Ison*, 729 A.2d at 839.

The Plaintiff in the Complaint stated that "a substantial portion of the events giving rise to this claim occurred in Delaware." Am. Compl. at ¶ 6. However, as

Plaintiff alleges, the Estate was established in New York; the insured and the Executor and the Estate were/are New York residents; and the Estate, the insured and the Executor were/are New York citizens. *Id.* at ¶ 1. Given these New York connections, it is difficult to understand how Plaintiff can claim that a substantial portion of the events giving rise to its claim occurred in Delaware. Moreover, the witnesses, documents, and records are not in Delaware; they are in New York, Texas and Minnesota – the locations of the three parties to this action. Furthermore, the Plaintiff's claimed injury occurred in New York, the location of the insured during the term of the Policy and the residence of the Executor. *See Aranda*, 183 A.3d at 1254; *see also Martinez v. E.I. DuPont De Nemours & Co.*, 82 A.3d 1, 30 (Del. Super. Ct. 2012), *aff'd,* 86 A.3d 1102 (Del. 2014). Delaware should not administer this suit when its interest in the suit and connection to the subject matter is ephemeral and so attenuated. *Id.*

The very clear New York connections discussed above also make clear that the locus of this dispute and its center of gravity is New York. *See, e.g.*, *Audi AG & Volkswagen of Am. v. D'Amato*, 341 F. Supp. 2d 734, 751 (E.D. Mich. 2004) ("A fundamental principle . . . is that litigation should proceed in [the district] where the case finds its center of gravity."); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling,

15

and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."). The trial of this case in Delaware will be inconvenient to the Plaintiff, and any other family members of the insured or Estate located in New York and a waste of the Court's judicial resources. The Court should not deploy its resources to resolve a case with little connection to Delaware because access to the evidence, the witnesses, and proof are not available in Delaware. *See Aranda*, 183 A.3d at 1254. The Delaware Action should therefore be dismissed or stayed.

  b. *Practical and Efficiency Considerations Disfavor Delaware*

Trial of this case within the Delaware would not be expeditious and would result in significant hardship and additional cost to the Defendants. Delaware would not be an efficient forum for litigating this dispute. The pendency of a parallel action in New York where all of the issues can be comprehensively treated also persuade in favor of a dismissal or stay. As stated above, piecemeal resolution of this dispute is certain, if the Delaware Action is permitted to continue. *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 559 A.2d 1301, 1311 (Del. Super. Ct. 1988). This is because the Estate is a New York resident; this Court does not have jurisdiction over all of the Defendants' claims and defenses in equity, denying the Defendants complete justice.

16

If this Court asserts primacy over this action, inconsistent and conflicting rulings between the parallel litigations are a possibility. *McWane Cast Iron Pipe Corp.*, 263 A.2d at 283. As the court in *Martinez* stated aptly for this case, there is no public interest in Delaware courts adjudicating where there is "no local interest," "[t]here is no local controversy, and 'home' is not Delaware to Plaintiff." *Martinez*, 82 A.3d at 38. Therefore, the Estate should not be permitted to litigate this case in Delaware.

3. *Defendants Will Face Undue and Overwhelming Hardship If This Litigation is Permitted to Proceed in Delaware; The Motion to Dismiss Should Be Granted*

Based on a totality of the factors and the Defendants' overwhelming hardship, dismissal is warranted. *IM2 Merch. & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at *8 (Del. Ch. Nov. 2, 2000) ("*Tirex*") (granting a motion to dismiss) ("In evaluating whether the defendants have met their burden, I cannot give excessive weight to any particular factor, but must consider the weight of all the relevant factors, being mindful of the heavy burden borne by the defendants."). "There is a proper place for dismissals in Delaware based *on forum non conveniens*," and "the overwhelming hardship standard is in reality less onerous than the Court's decisions have appeared to suggest." *Martinez*, 82 A.3d at 26, 37 (granting a motion to dismiss). In granting dismissal, the *Martinez* Court emphasized the inappropriateness of the Delaware forum because Delaware had

17

only a tenuous connection to the litigation through a nominal Delaware corporation, as here with the Delaware trust. *Id.* at 36, 39. The opinion further underlined the "significant hardship" imposed on the defendant and the "increased expense, inconvenience, and delay" in defending the action when Delaware law was inapplicable.

*Tirex* also stands for the proposition that dismissal is appropriate where "significant and undue costs" will be placed on defendants that "are unjustified by any countervailing public or legitimate private interest served by conducting [the case in Delaware]. . .The defendants are being subjected to this inconvenience solely because Tirex is a Delaware corporation even though this fact has little, if any, importance to the plaintiff's claims." *Tirex*, 2000 WL 1664168, at *11. The reasoning from these cases should govern here.

The Estate's apparent tactic in this action is to create more litigation, drain resources, and wrangle the parties and the courts into an extensive forum battle, eluding the interests of judicial economy, comity, efficiency, fairness, and the orderly administration of the property—the Policy's death benefit. *BP Oil Supply Co. v ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. Ct. Feb. 25, 2010). As detailed above, the Estate is a New York resident; the Executor is a New York citizen and resident; the New York forum has the strongest pull on this controversy; the witnesses and records are not in Delaware; and there is no nexus

18

to Delaware beyond the fact that the trust that was the original owner and beneficiary of the Policy was a Delaware trust.  Furthermore, there is an available adequate forum in New York that can offer prompt and complete relief.  *See id.* at *2.  Unjustified cost, delay, and inconvenience are certain if this Delaware Action is permitted to proceed.  This case should be dismissed.

## II.   IN THE ALTERNATIVE, SECURITIES INTERMEDIARY SHOULD BE DISMISSED FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION

To the extent this Court decides not to dismiss or stay this action, it nonetheless should be dismissed for lack of personal over Securities Intermediary pursuant to Superior Court Civil Procedure Rule 12(b)(2).

On a motion to dismiss for lack of personal jurisdiction pursuant to Superior Court Civil Procedure Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the trial court's exercise of jurisdiction over a nonresident defendant. *Wiggins v. Physiologic Assessment Servs., LLC*, 138 A.3d 1160, 1164 (Del. Super. Ct. 2016); *McKamey v. Vander Houten*, 744 A.2d 529, 531 (Del. Super. Ct. 1999). Although the Court must have personal jurisdiction under Delaware's long-arm statute[1] and the Due Process Clause, "the long arm statute is only as broad as the

---

[1] See also 10 Del. C. § 3104(c)(1)-(4). As the Delaware Superior Court has recognized:

> Specific jurisdiction depends on an affiliation between
> the forum and the underlying controversy, principally,

Due Process Clause will allow it to be, and cases interpreting the constitutional reach of personal jurisdiction supersede conflicting language in the long arm statute. *Rosado v. State Farm Mutual Automobile Insurance Company*, 2020 WL 3887880, at \*2 (Del. Super. Ct. July 9, 2020).

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore,* 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). The requisite contacts between the defendant and the forum may be general (all-purpose), or specific (conduct-linked). *See Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014). Additionally, a party subject to personal jurisdiction must have contacts strong enough "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment*

---

> that the activity or occurrence takes place in the forum state and is therefore subject to the State's regulation….Sections 3104(c)(1), (c)(2), and (c)(3) of 10 Del. C. § 3104 have been deemed to be specific jurisdiction provisions….Subsection (c)(4) of 10 Del. C. § 3104, pertains to general jurisdiction in cases where the cause of action is unrelated to Delaware contacts. As discussed above, general jurisdiction is premised on a defendant's forum contacts that are unrelated to the plaintiff's injury."

*In re Asbestos Litig.,* 2015 WL 556434, at \*6 (Del. Super. Ct. Jan. 30, 2015).

*Comp. & Placement,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

In this case, the Amended Complaint fails to establish any basis for this Court to exercise general or specific jurisdiction over Securities Intermediary. There is no connection between Plaintiff's allegations and Delaware, much less contacts that would give rise to personal jurisdiction over Securities Intermediary.

### A.      There Is No General Jurisdiction Over Securities Intermediary

"The court may only exercise general jurisdiction when a defendant's contacts with Delaware are so continuous and systematic as to render defendant essentially at home in the forum state." *Ali v. Beechcraft Corp.,* 2014 WL 3706619, at *2 (Del. Super. Ct. June 30, 2014) (quotations omitted).   As the Supreme Court made clear in *Daimler,* for a corporate entity such as Securities Intermediary, such jurisdiction is proper only where the entity is incorporated and where it maintains its principal place of business. *Daimler AG,* 571 U.S. at 137.

Plaintiff cannot establish general jurisdiction over Securities Intermediary in Delaware, as Plaintiff has admitted that Securities Intermediary's principal place of business is not in Delaware (Compl. ¶ 3; Nuxoll Decl. ¶ 4.)[2]  Furthermore, Plaintiff has not, and cannot, allege that Securities Intermediary is incorporated in Delaware given that it is a national banking association. Nuxoll Decl., ¶ 4.  That ends the

---

[2]  Indeed, Securities Interemdiary does not have any offices or employees in Delaware in connection with the life settlements portion of its business and does not supervise the life settlements portion of its business from Delaware. (Nuxoll Decl., ¶ 5.)

inquiry under *Daimler.* Similarly, Plaintiff cannot establish general jurisdiction over Securities Intermediary under subsection (c)(4) of Delaware's long-arm statute because a party does not come within the terms of the statute if it maintains no branch or subsidiary office in Delaware and, like Securities Intermediary, does not engage in the applicable business in the state. *Mayhall v. Nempco, Inc.*, 1994 WL 465545, at *4 (Del. Super. Ct. July 29, 1994); *Plumb v. Cottle, 492* F. Supp. 1330, 1334 (D. Del. 1980). As noted, Securities Interemdiary does not have any offices or employees in Delaware in connection with the life settlements portion of its business and does not supervise the life settlements portion of its business from Delaware. Nuxoll Decl., ¶ 5.

### B.    There Is No Specific Jurisdiction Over Securities Intermediary

It is also well settled "[s]pecific jurisdiction may be exercised when a defendant has purposefully directed its activities at residents of the forum state, and where the alleged injuries arose out of those activities." *Sills v. Smith & Wesson Corp.,* 2000 WL 33113806, at *10 (Del. Super. Ct. Dec. 1, 2000) (quotations omitted). Moreover, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

Here, there is no basis for the exercise of specific jurisdiction in Delaware over Securities Intermediary under that well-established test. Simply put, the

events giving rise to this litigation have no connection whatsoever with Delaware. The Policy in question was issued on the life of a New York resident. *See* Amended Compl. at 1. The Insured did not live in New York at the time she applied for the Policy or even at the time that he died. *Id;* Exh. A at 28. Moreover, there is no allegation or suggestion in the Complaint that Securities Intermediary engaged in activity in Delaware with respect to the Policy. As a result, not only would exercising specific jurisdiction over Securities Intermediary offend due process, but subsections (c)(1)-(3) of Delaware's long- arm statute are inapplicable on their face. *See* 10 Del. C. § 3104(c)(1)-(3).

Bereft of any contacts between Securities Intermediary and Delaware, the Complaint alleges that nonparty Coventry, the entity that allegedly spurred the Insured to apply for the Policy, is a "family of interrelated Delaware entities." (Compl. ¶¶ 9. 12.). But the Policy does not evince that Coventry was involved in the application for, or issuance of the Policy, in any way. *See* attached Exh. A at 28-49. Even if it were, Coventry's purported contacts with Delaware cannot be imputed to Securities Intermediary for purposes of establishing personal jurisdiction over Securities Intermediary. As the Supreme Court explained in *Walden*, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons

affiliated with the State." 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475). Plaintiff cannot therefore rely upon nonparty Coventry's contacts with Delaware in an effort to assert jurisdiction over Securities Intermediary. Coventry's contacts with Delaware would be relevant only if Plaintiff were suing Coventry (and only in regard to a Coventry. It is suing Securities Intermediary, which has no connection with Delaware.

Plaintiff makes no effort to create a nexus between Securities Intermediary and Delaware. The Amended Complaint alleges that Securities Intermediary acquired the Policy an unspecified amount of time after the Policy was issued and that benefits from the Policy were initially paid to Securities Intermediary before being credited to VLF (Am. Compl. ¶¶ 31, 32.) Significantly, none of these activities are alleged to have occurred in Delaware (or to have any connection whatsoever with Delaware). The Complaint lacks even the most basic showing that Securities Intermediary had any activity in Delaware, much less that Securities Intermediary "directed activities" at Delaware that would allow for this Court to exercise specific jurisdiction.

## <u>CONCLUSION</u>

The motion to dismiss should be granted based on Defendants' overwhelming hardship in defending this action with no connection to Delaware in a Delaware forum. In the alternative, the motion to dismiss or stay should be granted based on the pendency of the New York Action that can resolve all of the issues and the doctrine of *forum non conveniens*. Furthermore, to the extent this action is allowed to proceed, Securities Intermediary should be dismissed for lack of personal jurisdiction.

MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP

*/s/ David P. Primack*

David P. Primack (#4449)
300 Delaware Ave., Suite 770
Wilmington, DE 19801
Telephone: (302) 300-4512
Facsimile: (302) 654-4031
E-mail: dprimack@mdmc-law.com
*Counsel for Defendants*

Dated: July 20, 2020

25