# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERRY GARRETT, an individual, as Special Administrator for the ESTATE OF FRANK GARRETT, JR., , | |
| Plaintiff, | |
| v. | Case No. 3:22-cv-00089-SALM |
| ITM TWENTYFIRST, LLC; VIVA CAPITAL 3, L.P.; and U.S. BANK, N.A., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
## VIVA CAPITAL 3, L.P.'S AND U.S. BANK, N.A.'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................5

    A.    Frank Garrett, Jr. Applies for and Obtains the Life Insurance Policy ...................5

    B.    After More than Two Years, Mr. Garrett Sells the Policy in a Secondary
        Market Transaction ...................................................................................6

    C.    Mr. Garrett Dies and L.P. Receives Payment of the Death Benefit Under the
        Policy. ...................................................................................................7

    D.    Plaintiff's Litigation Concerning Entitlement to the Death Benefit. ......................7

STANDARD OF REVIEW .......................................................................................10

    A.    Motion to Dismiss under Rule 12(b)(1)..................................................10

    B.    Motion to Dismiss under Rule 12(b)(6)..................................................10

    C.    Motion to Dismiss under Rule 12(b)(2)..................................................10

ARGUMENT ..........................................................................................................11

I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS
      DISPUTE. ...................................................................................................11

II.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
      GRANTED. ..................................................................................................14

    A.    Plaintiff's Claim to "Recover" the Death Benefit Is Time-Barred. ......................14

    B.    Securities Intermediary Is Not a Proper Defendant. .............................................19

III.   THE COURT LACKS PERSONAL JURISDICTION OVER L.P. AND
      SECURITIES INTERMEDIARY. ...................................................................22

    A.    Plaintiff Cannot Establish General Jurisdiction over L.P. or Securities
        Intermediary ...........................................................................................22

    B.    L.P. and Securities Intermediary Are Not Subject to Specific Jurisdiction in
        Connecticut ............................................................................................23

    C.    L.P. and Securities Intermediary Are Not Subject to Jurisdiction under
        Connecticut's Long-Arm Statute ...........................................................26

i

IV.     PLAINTIFF CANNOT MAINTAIN A CLAIM FOR VICARIOUS LIABILITY
AGAINST L.P. OR SECURITIES INTERMEDIARY .................................................... 27

CONCLUSION ........................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                 <u>Page(s)</u>

*Am. Homecare Fed'n v. Paragon Sci. Corp.*,
    27 F. Supp. 2d 109 (D. Conn. 1998)................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................20

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002)..........................................................................25, 26

*Barrett v. City of Newburgh*,
    720 F. App'x 29 (2d Cir. 2017) ........................................................................17

*Barrow v. Wethersfield Police Dep't.*,
    66 F.3d 466 (2d Cir. 1995)................................................................................17

*Blue Squirrel Props., LLC v. US Bank Nat'l Ass'n.*,
    No. 3:20-cv-00047 (VLB), 2020 WL 373092 (D. Conn. Jan. 23, 2020)...............12

*Broderick v. Rsch. Found. of State Univ. of N.Y.*,
    No. 10-CV-3612 (JS) (ETB), 2010 WL 3173832 (E.D.N.Y. Aug. 11, 2010).........27

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).....................................................................................23, 25

*Calder v. Jones*,
    465 U.S. 783 (1984)...........................................................................................24

*Carden v. Arkoma Assocs.*,
    494 U.S. 185 (1990)...........................................................................................12

*Caxton Int'l, Ltd. v. Reserve Int'l Liquidity Fund, Ltd.*,
    No. 09 Civ. 782 (PGG), 2009 U.S. Dist. LEXIS 67223 (S.D.N.Y. July 30,
    2009) ..................................................................................................................14

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998).................................................................................24

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) ...............................................................18

*In re Conn. Asbestos Litig.*,
    677 F. Supp. 70 (D. Conn. 1986).......................................................................26

*Cresswell v. Sullivan & Cromwell*,
    922 F.2d 60 (2d Cir. 1990).................................................................................11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................................................22

*Degrooth v. Gen. Dynamics Corp.*,
    837 F. Supp. 485 (D. Conn. 1993)..........................................................................5

*Diamond State Ins. Co. v. Worldwide Weather Trading LLC*,
    No. 02 Civ.2900 LMM GWG, 2002 WL 31819217 (S.D.N.Y. Dec. 13, 2002)....................28

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
    160 F.3d 925 (2d Cir. 1998)....................................................................................11

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)..................................................................................................14

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005)................................................................................................11

*Farris v. Moeckel*,
    664 F. Supp. 881 (D. Del. 1987).............................................................................17

*Fenn v. Yale Univ.*,
    283 F. Supp. 2d 615 (D. Conn. 2003)....................................................................18

*Finn v. Great Plains Lending, LLC*,
    No. 15-4658, 2016 WL 705242 (E.D. Pa. Feb. 23, 2016) ......................................23

*Flemming v. Port Auth. of N.Y., N.J.*,
    21-cv-1112 (BMC), 2021 U.S. Dist. LEXIS 44411 (E.D.N.Y. Mar. 9, 2021) ......................12

*Gibbons v. NER Holdings*,
    983 F. Supp. 310 (D. Conn. 1997).........................................................................18

*Hamilton v. Smith*,
    773 F.2d 461 (2d Cir. 1985)....................................................................................19

*Handlesman v. Bedford Vill. Assocs., L.P.*,
    213 F.3d 48 (2d Cir. 2000)......................................................................................12

*Herrick Co., Inc. v. SCS Commc'n, Inc.*,
    251 F.3d 315 (2d Cir. 2001)....................................................................................12

*Hodges v. Glenhome Sch.*,
    713 Fed. Appx. 49 (2d Cir. 2017)...........................................................................19

*Hogan v. Fisher*,
    738 F.3d 509 (2d Cir. 2013)....................................................................................17

*Hubbard-Hall, Inc. v. Monsanto Co.*,
  98 F. Supp. 3d 480 (D. Conn. 2015)................................................................19

*Int'l Audiotext Network v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ...............................................................................5

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*,
  226 A.3d 727 (Del. 2020) ..........................................................................15, 16

*Jean-Louis v. Carrington Mortg. Servs.*,
  No. 19-cv-04302, 2020 WL 1042644 (E.D.N.Y. Mar. 4, 2020)..........................23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941).......................................................................................14

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991)............................................................................3

*Krupski v. Costa Crociere S.p.A.*,
  560 U.S. 538 (2010).......................................................................................17

*Lefkowitz v. Bank of N.Y.*,
  676 F. Supp. 2d 229 (S.D.N.Y. 2009).............................................................3

*Lehman Bros. Holdings, Inc. v. Kee*,
  268 A.3d 178 (Del. 2021) ..............................................................................15

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013)...........................................................................24

*Lorenzetti v. Hodges*,
  No. S10C-07007 RFS, 2012 WL 1410103 (Del. Super. Ct. Jan. 27, 2012) ..........18

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)...........................................................................11

*Mergenthaler v. Asbestos Corp. of Am.*,
  500 A.2d 1357 (Del. Sup. Ct. 1985) ..............................................................18

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996).............................................................................26

*Minard v. Pareto Partners*,
  No. 04 Civ. 741 (CSH), 2005 WL 2206783 (S.D.N.Y. Sept. 12, 2005)...............13

*Munno v. Town of Orangetown*,
  391 F. Supp. 2d 263 (S.D.N.Y. 2005)............................................................10

*N. Sails Grp. LLC v. Bds. & More GmbH,*
    C.A. No. 3:18-cv-160 (CSH), 2018 WL 731797 (D. Conn. Feb. 6, 2018)............................11

*Nucci v. PHH Mortg. Corp.,*
    679 Fed. Appx. 48 (2d Cir. 2017) ............................................................................................5

*Olkey v. Hyperion 1999 Term Tr.,*
    98 F.3d 2 (2d Cir. 1996)..........................................................................................................10

*Palmer v. Globalive Commc'ns Corp.,*
    No. 07 Civ. 038(MGC), 2008 WL 2971469 (S.D.N.Y. Aug. 1, 2008) ...................................25

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,*
    896 F.2d 674 (2d Cir. 1990)....................................................................................................12

*Romanella v. Hayward.,*
    933 F. Supp. 163 (D. Conn. 1996)...........................................................................................10

*Shepherd v. Annucci,*
    921 F.3d 89 (2d Cir. 2019)......................................................................................................11

*Shipping Fin. Servs. Corp. v. Drakos,*
    140 F.3d 129 (2d Cir. 1998)....................................................................................................11

*Sikhs for Justice v. Nath,*
    893 F. Supp. 2d 598 (S.D.N.Y. 2012).....................................................................................10

*Stephens v. Horwalk Hosp.,*
    162 F. Supp. 2d 36 (D.Conn. 2001).........................................................................................15

*U.S. Liab. Ins. Co. v. M Remodeling Corp.,*
    444 F. Supp. 3d 408 (E.D.N.Y. 2020) ....................................................................................13

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
    860 A.2d 312 (Del. 2004) ........................................................................................................16

*Walden v. Fiore,*
    571 U.S. 277 (2014)................................................................................................................23

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016)....................................................................................................23

*Wells Fargo Bank, N.A. v. Est. of Malkin,*
    No. 172, 2022 Del. LEXIS 155 (Del. Sup. Ct. May 26, 2022)................................................22

**Statutes**

18 Del. C. § 2704 .......................................................................................................................15

18 Del. C. § 2704(b) .................................................................................................15, 16

28 U.S.C. § 1332 ..............................................................................................................9

28 U.S.C. § 1332(a)(1) ...................................................................................................11

Cal. Code Civ. Proc. § 340(a) .........................................................................................4

Conn. Gen. Stat. § 33-929 .......................................................................................26, 27

Conn. Gen Stat. § 52-577 ................................................................................................4

Conn. Stat. § 42a-8-102(a)(13)(B) .........................................................................1, 4, 21

Del. Code Ann. tit. 10, § 8106 ......................................................................................15

Fed. R. Civ. Proc. § 8 ....................................................................................................20

Fed. R. Civ. Proc. §  9(b) ..........................................................................................4, 19

Fed. R. Civ. Proc. § 11 ..............................................................................................4, 12

Fed. R. Civ. Proc. § 12(b)(1) .....................................................................................1, 10

Fed. R. Civ. Proc. § 12(b)(2) .............................................................................1, 10, 11

Fed. R. Civ. Proc. § 12(b)(6) ....................................................................1, 5, 10, 14

Fed. R. Civ. Proc. § 15(c) ..............................................................................................17

Fed. R. Civ. Proc. § 15(c)(1)(A) ...................................................................................17

Fed. R. Civ. Proc. § 15(c)(1)(C) ...................................................................................17

**Other Authorities**

Rob Levin, *How Life Settlements Can Offer Returns and Diversification*, Forbes
(Mar. 9, 2021), https://tinyurl.com/47vavf28 .........................................................2

Defendants Viva Capital 3, L.P. ("L.P.") and U.S. Bank, N.A. ("Securities Intermediary")[1] submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's[2] First Amended Complaint (the "Amended Complaint" or "AmCompl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(6) for failure to state a claim upon which relief can be granted, and 12(b)(2) for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

On January 18, 2019, Frank Garrett, Jr.—the insured at the center of this action concerning the $10 million death benefits under a life insurance policy which he had caused to be sold over a decade earlier—passed away. On March 1, 2019, the insurance company (PHL Variable Insurance Company ("PHL")) paid the $10 million death benefit (plus interest and a return of premiums) under that Policy[3] to the then-current beneficiary under the Policy as it was required to do. That payment was made to Securities Intermediary on behalf of L.P., the Policy's beneficial owner. As is its obligation, Securities Intermediary then credited the entire death benefit to L.P. because L.P. was the beneficial owner of the Policy.

Exactly three years after Mr. Garrett's death, on January 18, 2022, Plaintiff filed three duplicative federal court actions in courts around the country seeking to "recover" death benefits paid out by insurance companies on policies insuring Mr. Garrett's life against an improper

---

[1] U.S. Bank, N.A. has acted, and continues to act, solely in its capacity as a securities intermediary pursuant to the UCC. *See, e.g.*, Conn. Stat. § 42a-8-102(a)(13)(B).

[2] Although Plaintiff purports to assert his claims as Special Administrator on behalf of the Estate of his late father, Frank Garrett, Jr. (the "Estate") (AmCompl. at 1, ¶ 1), the Estate does not yet exist and is in the process of being formed pursuant to a petition filed in San Mateo County, California, requesting Plaintiff's appointment as Special Administrator of the Estate and Jerry Garrett has not yet been appointed as Special Administrator of the Estate (*id.* at ¶ 3). That petition, filed on April 13, 2022, has not yet been addressed by the court in San Mateo County as of this filing. Because it is not clear whether or not the Estate will be formed and whether or not Plaintiff will be appointed in that capacity, it is unclear that Plaintiff currently has standing to prosecute this action. In any event, for the reasons set forth herein, the Amended Complaint should be dismissed regardless of Plaintiff's potential standing problems.

[3] The term "Policy," as used herein, refers to the life insurance policy issued by PHL insuring the life of Frank Garrett, Jr., bearing Policy Number 97516141.

defendant—ITM TwentyFirst, LLC ("ITM"), the servicer of the Policy who never received (let alone retained) a penny of the death benefit that Plaintiff seeks to "recover"—and unnamed "John Doe" and "ABC Corporation" defendants.[4]  Plaintiff invoked the courts' subject matter jurisdiction based on purported diversity of citizenship for all such actions, even though Plaintiff initially professed not to know the identities of the parties that received the death benefit under the Policy. Plaintiff initially prosecuted only one of those federal actions, the California Federal Litigation.

The court presiding over the California Federal Litigation dismissed Plaintiff's claims for lack of personal jurisdiction over ITM (the only defendant actually named in the original complaints filed in any of the Federal Litigations) and granted limited jurisdictional discovery. Following that decision, L.P. filed an action in California state court seeking a declaratory judgment that it, as beneficial owner of the Policy it had purchased in the life settlement market,[5] is the rightful owner of the death benefit that was paid to it via Securities Intermediary and is entitled to retain those monies.  *See* Complaint, *Viva Capital 3, L.P. v. Garrett*, Case No. 22-CIV-

---

[4] In addition to this action, those federal litigations include cases pending in the United States District Court for the Northern District of California (the "California Federal Litigation") and the District of Massachusetts (the "Massachusetts Federal Litigation").

[5] Life insurance policies are no different from other types of property and owners of life insurance policies may sell them freely in the secondary market after issuance.  Over the last few decades, a robust market has developed for the purchase and sale of life insurance policies after issuance much like the market for the sale of stock after an initial public offering.  This market (known as the life settlement market) has grown into a fully legal, highly regulated market that allows policy owners the freedom to decide whether to monetize their policies for a greater gain than what they would receive from an insurance company were they to surrender their policies or allow them to lapse, while at the same time offering potential purchasers the ability to buy into an investment asset class that is uncorrelated to general market risk.  *See, e.g.*, Rob Levin, *How Life Settlements Can Offer Returns and Diversification*, Forbes (Mar. 9, 2021), https://tinyurl.com/47vavf28.  As explained below, here, Mr. Garrett willingly caused the trust to assign the Policy in an exercise of his own independent judgment.

01911 (Cal. Super Ct. San Mateo Cnty.)[6] (Ex. A)[7].  In that complaint, L.P. explained in detail that it was seeking such a declaratory judgment in state court because there is no diversity of citizenship between the parties due to the fact that Plaintiff and the purported Estate are California citizens, and L.P. is also a citizen of California (among other states) because L.P. has limited partner investors that are California citizens, and L.P.'s citizenship as a limited partnership for diversity purposes is based upon the citizenship of all its investors.  (*See id.*, ¶¶ 17, 46-51.)  In response, rather than litigate this dispute in the state courts of California—and despite the fact that state courts are the only courts with the power to adjudicate this dispute—Plaintiff purported to serve its original complaint in this action on L.P. and Securities Intermediary (even though neither was named as a defendant).  Later the same day, Plaintiff filed an Amended Complaint naming both L.P. and Securities Intermediary as defendants, again asserting that there is complete diversity of citizenship between the parties.

Plaintiff's claim fails as a matter of law for multiple reasons, but this Court need not even reach the substance of the dispute because there is not complete diversity of citizenship between the parties, and therefore this Court lacks subject matter jurisdiction over this action.  That makes dismissal mandatory since it is black letter law that a federal court is a court of limited jurisdiction which is powerless to adjudicate a dispute over which it has no subject matter jurisdiction.  Despite being informed prior to filing the Amended Complaint that naming L.P. as a defendant would destroy diversity of citizenship, thereby divesting this Court of subject matter jurisdiction over this

---

[6] "Courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Lefkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009) ("Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions.")

[7] All references herein to "Ex." refer to exhibits to L.P and Securities Intermediary's Motion to Dismiss, filed herewith, unless otherwise indicated.

litigation, Plaintiff has made absolutely no effort to meet its obligations to conduct a pre-filing inquiry under Rule 11 or even to attempt to allege adequately L.P.'s citizenship in accordance with U.S. Supreme Court precedent. Accordingly, the Amended Complaint must be dismissed for that reason and the parties should litigate this dispute in a court with jurisdiction—such as California state court, where there already is such a case pending and where the parties have already joined issue through the filing of an answer and counterclaims.

Although the threshold jurisdictional question is dispositive, even if the Court were to reach the substance of this dispute, Plaintiff's claims fail as a matter of law for several independent reasons. Plaintiff's claims are time-barred, whether under Delaware's three year statute of limitations or the statutes of limitations under Connecticut or California law.[8] Plaintiff's claim accrued no later than when the death benefit under the Policy was paid on March 1, 2019. There is no basis to extend the statute of limitations under either the relation-back doctrine—which is inapplicable to the Plaintiff's claim—or on the basis of any purported fraudulent concealment, which Plaintiff cannot and does not even attempt to allege against any entity, much less L.P. or Securities Intermediary (and certainly not with the particularity required by Federal Rule of Civil Procedure 9(b)). Plaintiff's claim also cannot proceed as against Securities Intermediary because it retained no portion of the death benefit and therefore is not a proper defendant in this action to "recover" the death benefit payment.[9]

---

[8] While there is no clear statute of limitations for Plaintiff's claim under Connecticut law, the closest analogue is Connecticut's general three-year statute of limitations for actions founded upon a tort. Conn. Gen. Stat. § 52-577. As for California, the insured, Mr. Garrett, was at all relevant times a citizen and resident of California, and, as such, the Estate also would be considered a citizen of California. (AmCompl. ¶ 2.) If California law were applied, the limitations period would be one year (because Plaintiff asserts a claim under a statute for a penalty or forfeiture, Cal. Code Civ. Proc. § 340(a)) and the claim would similarly be time-barred.

[9] As is typical for securities intermediaries, the Securities Intermediary here acted as a conduit on behalf of its client, L.P., and credited L.P.'s account with the Death Benefit in the same way as when a person buys or sells stock and holds the stock in the name of its broker. *See* Conn. Stat. § 42a-8-102(a)(13)(B) (defining a securities intermediary as, in relevant part, a bank "that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity."). Like a broker, a securities intermediary handles deposits and withdrawals from its client's

Furthermore, Plaintiff's claim cannot proceed because this Court lacks personal jurisdiction over both L.P. and Securities Intermediary, neither of which have sufficient minimum contacts with this forum as a matter of either Connecticut law or due process.

Finally, as for Plaintiff's claim of vicarious liability, such a claim is dependent on the validity of Plaintiff's claims against ITM and its underlying claim to the Policy's Death Benefit. Because those claims cannot proceed for the reasons set forth herein and in ITM's separately-filed motion to dismiss, Plaintiff's vicarious liability claim accordingly fails.

For all of those reasons, the Court should dismiss this action and allow the litigation of this dispute to proceed in state court, where it belongs.

## STATEMENT OF FACTS[10]

### A.    Frank Garrett, Jr. Applies for and Obtains the Life Insurance Policy

On or about February 2, 2006, Frank Garrett, Jr. applied for a life insurance policy with PHL (the "Application"). (*See* AmCompl. ¶¶ 11, 33, 18; Ex. B at 57.) In the Application, Mr. Garrett requested insurance coverage with a face amount of $10 million on his own life, naming a trust that he had established (the Frank Garrett, Jr. 2006 Insurance Trust dated February 2, 2006 (the "Insurance Trust")) as the owner of the Policy. (Ex. B at 52.) On February 7, 2006, PHL

---

account, but all those deposits and withdrawals are for the benefit of the account holder. When money is deposited into the account holder's account, that money belongs to the account holder, not Securities Intermediary.

[10] On a motion to dismiss under Rule 12(b)(6), the Court accepts well-pleaded allegations of fact, but disregards statements in the complaint that merely offer legal conclusions couched as fact, threadbare recitals of the elements of a claim, and unsupported conclusions or unwarranted inferences. *See, e.g. Nucci v. PHH Mortg. Corp.*, 679 Fed. Appx. 48, 50 (2d Cir. 2017) ("Bare allegations amounting only to legal conclusions cannot defeat a 12(b)(6) motion.") (internal citations and quotation marks omitted). Furthermore, the Court may consider documents outside of the pleadings where there was undisputed notice to plaintiffs of the document's contents and the document was integral to the plaintiff's claim. *Degrooth v. Gen. Dynamics Corp.*, 837 F. Supp. 485, 487 (D. Conn. 1993). The Court may also consider documents attached as exhibits or incorporated by reference. *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). In addition, the Court may consider public records over which a court may take judicial notice. *Kramer*, 937 F.2d at 774. Accordingly, Defendants submit for the Court's consideration documents incorporated by reference in the Complaint, but which Plaintiff elected not to attach, including a copy of the policy and application at issue (Ex. B) and documents concerning the Mr. Garrett's sale of the Policy (Ex. A at 33-41), as well as public filings from other jurisdictions (Exs. A, D-G).

issued the Policy to Mr. Garrett, which listed the Insurance Trust as the owner of the Policy. (*Id.* at 1-2, 52.) Mr. Garrett was the Settlor of the Insurance Trust, for which his wife, Jean Lan Yang Garrett, served as Co-Trustee. (Ex. C at 1, 6.) Mrs. Garrett was also the beneficiary of the Insurance Trust. (*Id.* at 1.)

## B. After More than Two Years, Mr. Garrett Sells the Policy in a Secondary Market Transaction

In July 2008, after receiving life insurance coverage under the Policy for more than two years, Mr. Garrett directed the Trustee of the Insurance Trust to execute transaction documents to sell the Policy to Coventry First, LLC. (*See* AmCompl. ¶ 47, Ex. A at 33-41.) In connection with the sale, Mr. Garrett and the Insurance Trust executed a Life Insurance Policy Purchase Agreement in which Mr. Garrett represented and warranted, among other things, that:

- The sale was legally binding;

- The benefits under the policy, "including any portion of the death benefits, are incontestable . . . and to the best of Seller's knowledge there are no facts or circumstances in existence as of the date hereof which could serve as a defense to payment in full of the death benefits payable by the Insurer to the named beneficiaries upon the death of the Insured;"

- The Policy was in full force and effect and had not lapsed;

- Each of the owners and original beneficiaries of the Policy had an insurable interest in the life of the Insured; and

- None of their representations or warranties, including those in the Application or otherwise made to the Insurer, contained any untrue statements or omissions of material facts.

(*See* Ex. A at 35-36.) Mr. Garrett further covenanted and agreed to assist the buyer in keeping the Policy in force and agreed to indemnify the buyer from violations of any representation or warranties or "any claim by the Insurer or any other party (including, the estate of the Insured or any of Insured's descendants) that the original owner or any beneficiary of the Policy lacked an insurable interest in the life of the Insured." (*Id.* at 36.)

6

Following the sale of the Policy to an investor in the secondary market. Securities Intermediary was retained to act as securities intermediary for the Policy and became its record owner and the beneficiary of the Policy for the benefit of its client (who had purchased the beneficial interest in the Policy). (AmCompl. ¶¶ 48-49.) More than eight years after the Garretts sold the Policy, in December 2016, L.P. purchased all right and beneficial interest in the Policy in a tertiary market transaction and became its beneficial owner, with Securities Intermediary continuing to serve as securities intermediary for the Policy (but now for the sole benefit of L.P.). (*See* AmCompl. ¶¶ 50-51.)

C.    **Mr. Garrett Dies and L.P. Receives Payment of the Death Benefit Under the Policy.**

Mr. Garrett died on January 18, 2019. (AmCompl. ¶ 52.) Securities Intermediary subsequently submitted a claim to the carrier for payment of the Policy's death benefit, solely for the benefit of L.P. (*See id.* ¶¶ 54-55.). As it was required to do, on March 1, 2019, PHL paid the death benefit (a total of $21,129,278.51) (hereafter, the "Death Benefit") to Securities Intermediary solely for the benefit of L.P. (AmCompl. ¶ 54, Ex. A thereto.) On or about the same date, Securities Intermediary credited the full amount of the Death Benefit to L.P.'s securities account. (*See* AmCompl. ¶ 57.)

D.    **Plaintiff's Litigation Concerning Entitlement to the Death Benefit.**

On January 18, 2022, on the third anniversary of Mr. Garrett's death, Plaintiff filed three duplicative federal court actions—including this one—concerning the Policy and an additional insurance policy taken out by Mr. Garrett on his own life. The complaints in each of those actions named as defendants ITM, the servicer of the insurance policies, and unnamed "John Doe"/"ABC Corporation" defendants. In all three actions, Plaintiff seeks to "recover" the death benefits paid under those policies. At the time Plaintiff initiated those federal actions, he had not sought

appointment as Special Administrator of the Estate; that application was not made until approximately three months later (on April 13, 2022). (Ex. D.)

Plaintiff initially served the complaint in only the California Federal Litigation, which concerned both insurance policies. Plaintiff then requested that ITM (the only defendant named in any of the original complaints in any of the Federal Litigations) identify the entities that received the death benefits under the policies at issue so that Plaintiff could sue those entities, which ITM declined to voluntarily disclose. After that, Plaintiff moved for expedited discovery to try to obtain that and other information, and ITM moved to dismiss the California Federal Litigation. On April 25, 2022, the court presiding over the California Federal Litigation granted ITM's motion to dismiss on the grounds that the court lacked personal jurisdiction over ITM, provided Plaintiff leave to amend and to conduct jurisdictional discovery over a 90 day period, but otherwise denied the application for expedited discovery. (Ex. E.) Shortly thereafter, between May 9, 2022 and May 11, 2022, L.P. filed and served an action in California state court seeking a declaratory judgment that it was the proper owner of the Policy and the Death Benefit, and another Viva entity, Viva Capital Trust ("Viva Trust") filed an action in South Dakota state court seeking a similar declaratory judgment as to the other insurance policy and its death benefit (together, the "State Court Litigations"). (*See* Exs. A and F.)

Both complaints in the State Court Litigations explained, in detail, that L.P. and Viva Trust, like Mr. Garrett and the Estate, were citizens of California due to the citizenship of their limited partners and members (respectively) under controlling Supreme Court precedent. (*See* Ex. A, ¶¶ 44-51 and Ex. F, ¶¶ 46-53.) Accordingly, they made clear that the disputes concerning the policies could not be litigated in federal court on the basis of diversity jurisdiction due to the lack of diversity between the parties.

8

Notwithstanding Plaintiff's awareness of those facts, on May 25, 2022, Plaintiff attempted to serve L.P. with the original complaint in this action, even though that complaint named only ITM and "John Doe"/"ABC Corporation" (and *not* L.P. or Securities Intermediary) as defendants. Later that same day, Plaintiff filed the Amended Complaint in this action, naming L.P. and Securities Intermediary as additional defendants, and on May 26, 2022, Plaintiff served that Amended Complaint on L.P. and Securities Intermediary.

In the Amended Complaint, Plaintiff alleges that L.P. is a citizen of Delaware (and nowhere else) based solely on the allegation that L.P. is a Delaware limited partnership. (*See* AmCompl. ¶ 5.) Plaintiff made that allegation despite his awareness that L.P. is a limited partnership and that, as a matter of Supreme Court precedent, L.P.'s citizenship is derived from that of its limited partners and that its status as a Delaware limited partnership is *irrelevant as a matter of law* to its citizenship for diversity purposes, his awareness that L.P. has limited partners that are themselves unincorporated business entities, and his having been previously expressly told that L.P. has limited partners who, like Plaintiff, are citizens of California. As a result, at the time that Plaintiff filed and served the Amended Complaint, Plaintiff knew that by naming L.P. as a defendant, the Amended Complaint divested this Court of subject matter jurisdiction over this action. Plaintiff nonetheless alleges in conclusory fashion that the Court has subject-matter jurisdiction under 28 U.S.C. § 1332 "because there is complete diversity of citizenship between the Estate, a citizen of California, and the Defendants, citizens of Minnesota and Delaware . . ." (AmCompl., ¶ 7), without making any effort to allege the citizenship of L.P.'s limited partners, thereby ignoring U.S. Supreme Court teaching on how properly to allege diversity over partnerships.

## STANDARD OF REVIEW

**A.    Motion to Dismiss under Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal of any action based on a lack of subject matter jurisdiction.  When a defendant challenges subject matter jurisdiction on the basis of diversity, the plaintiff has the burden to establish the Court's jurisdiction by a preponderance of the evidence.  In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court "must construe the complaint liberally" and "accept as true all well-pleaded facts," *Romanella v. Hayward.*, 933 F. Supp. 163, 164-65 (D. Conn. 1996), but it is still plaintiff's burden to adequately allege and prove diversity of citizenship (where no federal question is presented) thereby establishing both at the pleading stage and throughout the litigation that the court has subject matter jurisdiction.

**B.    Motion to Dismiss under Rule 12(b)(6)**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true Plaintiff's factual allegations contained in the complaint—those setting out who did or said what, to whom, and when—and draws all reasonable inferences based on those factual allegations.  *See Olkey v. Hyperion 1999 Term Tr.*, 98 F.3d 2, 5 (2d Cir. 1996).  However, when considering a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of documents for which there is no "dispute as to their authenticity"; for "public records"; for documents "integral to the complaint"; or for documents sufficiently referred to in the complaint. *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005).

**C.    Motion to Dismiss under Rule 12(b)(2)**

When reviewing a motion to dismiss pursuant to Rule 12(b)(2), the Court must accept the facts alleged in the complaint as true and view any reasonable inferences in the light most favorable to the plaintiff.  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).  Consideration

10

of materials outside the complaint is appropriate in ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *See, e.g. Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019). When faced with a Rule 12(b)(2) motion, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserted," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), but rather from "evidence outside of the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS DISPUTE.

The Court lacks original jurisdiction over this matter because Plaintiff and L.P. are both citizens of California and, therefore, there is no diversity of citizenship here (nor is any federal question presented). Accordingly, this case cannot proceed in this Court.

As a federal court sitting in diversity, this Court "shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, *and is between citizens of different states*." 28 U.S.C. § 1332(a)(1) (emphasis added). "It is axiomatic that, for diversity jurisdiction, all of the adverse parties in a suit must be completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998). "Diversity is not complete if any plaintiff is a citizen of the same state as any defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). The presence of even a "single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). "If subject matter jurisdiction is lacking, the action must be dismissed." *N. Sails Grp. LLC v. Bds. & More GmbH*, C.A. No. 3:18-cv-160 (CSH), 2018 WL 731797, *24 (D. Conn. Feb. 6, 2018).

When there is no diversity among the parties, a defendant can move to dismiss the complaint on that basis. Where complete diversity is challenged by the defendant, the burden of proving its existence falls entirely on the plaintiff to support diversity. *Blue Squirrel Props., LLC v. US Bank Nat'l Assn.*, No. 3:20-cv-00047 (VLB), 2020 WL 373092, *2-3 (D. Conn. Jan. 23, 2020). Plaintiff must do so by pleading and then proving the citizenship of each party to the litigation. *See, e.g. Handlesman v. Bedford Vill. Assocs., L.P.*, 213 F.3d 48, 51-52 (2d Cir. 2000). A mere "bald assertion" that an individual is a resident of a certain state is insufficient to meet that burden. *Blue Squirrel Props, LLC*, 2020 WL 373092, at *3; *see also Flemming v. Port Auth. of N.Y., N.J.*, 21-cv-1112 (BMC), 2021 U.S. Dist. LEXIS 44411, at *4 (E.D.N.Y. Mar. 9, 2021) (dismissing case for lack of diversity jurisdiction and cautioning that plaintiff's lack of knowledge as to the identity of the members and partners of the defendant "does not excuse plaintiff's obligations under Rule 11," whose "requirement of a good faith basis is no less applicable to jurisdictional facts than any other facts"). Plaintiff has not, cannot and will not be able to demonstrate that diversity exists among the parties.

It is well-settled that the citizenship of an unincorporated entity such as a limited partnership is determined by the citizenship of each of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-97 (1990); *see Herrick Co., Inc. v. SCS Commc'n, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("[F]or purposes of establishing diversity, a partnership has the citizenship of each of its partners."); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (holding that the presence of a New York member of defendant unincorporated association, when the plaintiff was a New York corporation, defeated diversity jurisdiction). L.P. is a limited partnership, and as a result, it is a matter of black letter law that a court must look not only at all of the partners of L.P., but all of the partners or members of any other unincorporated entities that

12

constitute its partners, in order to determine the citizenship of L.P. for diversity purposes. *See, e.g. Minard v. Pareto Partners*, No. 04 Civ. 741 (CSH), 2005 WL 2206783, *1-2 (S.D.N.Y. Sept. 12, 2005) (holding that diversity jurisdiction was defeated after defendant demonstrated that its limited partner had a limited partner that was a citizen of New Jersey like the plaintiff). L.P.'s citizenship is therefore dependent upon the citizenship of every one of the partners in each of the partnerships (or members of each of the limited liability companies or other unincorporated business entities) that are limited partners of L.P. *See U.S. Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) (stating, in the comparable context of a limited liability company, "if any of an LLC's members are themselves non-corporate entities, then a plaintiff must allege the identity and citizenship of their members, proceeding up the chain of ownership until [the plaintiff] has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC"). Therefore, to determine L.P.'s citizenship, it is necessary to examine the citizenship of its partners and then continue to examine the partners/members/beneficiaries of any limited partnerships, limited liability companies, or other unincorporated business entities that comprise L.P.'s partners until one reaches individuals or corporations.

Plaintiff has not even attempted to meet his pleading burden here, and does not identify any limited partners of L.P. in its allegations. (AmCompl. ¶ 5.) Had Plaintiff attempted to meet its burden by alleging the citizenship of each of L.P.'s limited partners, that exercise would demonstrate that there is no diversity of citizenship here. As set forth in the Declaration of Daniel Lee ("Lee Decl."), filed herewith, L.P.'s limited partners include citizens of California.[11]

---

[11] The Lee Declaration verifies that at least one of L.P.'s investors is a California citizen (Lee Decl. ¶ 7) but does not list their name because their identities are not public, because L.P. is under a legal obligation to keep the identity of its investors confidential, and because release of that information would cause harm to L.P. and its limited partners (*see id.* at ¶ 6). To the extent the Court requires that information, L.P. can make the identity of its limited partners who are California citizens available for the Court to review *in camera*. (*Id.* at ¶ 7.) Identities of non-public investors are commonly kept confidential by courts, particularly when those non-public investors have not invoked the court's jurisdiction and there "is no evidence that the identities of investors directly affect the adjudication of whether subject

Accordingly, L.P. is a citizen of California (among other states) as a matter of law. Because Plaintiff and the Estate are also California citizens, this Court therefore lacks jurisdiction where, as here, the claim is not predicated on a federal question and there is no diversity, and the Court must therefore dismiss the Amended Complaint.

## II. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if this Court had subject matter jurisdiction—and it does not—Plaintiff's claim should be dismissed for failure to state a claim upon which relief can be granted, on multiple grounds. First, Plaintiff's claim is time-barred. Second, Plaintiff cannot state a claim against Securities Intermediary because, as Plaintiff knows, Securities Intermediary did not retain any portion of the Death Benefit that Plaintiff seeks to "recover".

### A. Plaintiff's Claim to "Recover" the Death Benefit Is Time-Barred.

Plaintiff's claim to "recover" the Death Benefit should be dismissed under Rule 12(b)(6) because it is time-barred under Delaware's three-year statute of limitations.[12]

Federal courts sitting in diversity apply state substantive law, including choice of law rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Connecticut's choice of law rules, Delaware's statute of limitations applies to Plaintiff's claim to "recover" the Death Benefit. L.P. does not dispute that the Policy is subject to Delaware law because the Policy was applied for and delivered to the trustee of a Delaware trust. (*See* AmCompl. ¶ 59.)

---

matter jurisdiction exists over [the] action." *Caxton Int'l, Ltd. v. Reserve Int'l Liquidity Fund, Ltd.*, No. 09 Civ. 782 (PGG), 2009 U.S. Dist. LEXIS 67223, at *19-20 (S.D.N.Y. July 30, 2009).

[12] The same is true under Connecticut's or California's statutes of limitations, if they were found to apply. *See* Note 8, *supra*.

Under Connecticut law, which statute of limitations governs depends on whether that limitation is substantive, rather than a procedural remedy. *Stephens v. Horwalk Hosp.*, 162 F. Supp. 2d 36, 41-42 (D.Conn. 2001). A statute of limitations is substantive especially when "it applies to a new right created by statute," or one that did not exist in the common law. *Id.* at 42. Otherwise, if the right does exist at common law, then the statute of limitations for that right is procedural. Here, the insurable interest statute in Delaware created a substantive right. 18 Del. C. § 2704. Plaintiff's claim is brought under 18 Del. C. § 2704(b), which provides:

> If the beneficiary, assignee or other payee under any contract made in violation of this section receives from the insurer any benefits thereunder accruing upon the death, disablement or injury of the individual insured, the individual insured or his or her executor or administrator, as the case may be, may maintain an action to recover such benefits from the person so receiving them.

The applicable statute of limitations under Delaware law for actions based on a statute requires that such action be brought within three years of accrual. Del. Code Ann. tit. 10, § 8106. Accordingly, Delaware's three-year statute of limitations applies.

Plaintiff's claim is thus untimely because it accrued more than three years before the Amended Complaint was served on May 26, 2022. Under Delaware law, the claim accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Lehman Bros. Holdings, Inc. v. Kee*, 268 A.3d 178, 185-86 (Del. 2021) (holding that a breach of contract action accrues when the contract is broken, not when damages are ascertained). Delaware is an "occurrence rule" jurisdiction, meaning that the claim accrues even when "a plaintiff is ignorant of the [wrongful act]," and even if the plaintiff is "unaware of the facts supporting a cause of action." *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732-33 (Del. 2020); *Lehman Bros. Holdings*, 268 A.3d at 186.

Because the Delaware statute under which Plaintiff seeks to recover concerns "recover[y] [of] benefits from the person so receiving them," a claim accrues under the statute upon receipt of

benefits from the insurer. *See* 18 Del. C. § 2704(b). Thus, the claim accrued when the death benefit was paid on March 1, 2019. Plaintiff was aware of Mr. Garrett's death on January 18, 2019, and he was aware Mr. Garrett held, and later sold, the Policy insuring his life. Moreover, as Plaintiff alleged, the death benefit was paid to Securities Intermediary on or about March 1, 2019, and then credited to L.P.'s securities account. (*See* AmCompl. ¶¶ 54-57, Ex. A thereto.) Accordingly, at the time the death benefit was paid on March 1, 2019, Plaintiff was sufficiently aware of all facts concerning the death benefit for his claim to accrue. Indeed, it appears Plaintiff was so aware, having filed the original complaint in this action on the third anniversary of Mr. Garrett's death, on January 18, 2022. (*See* AmCompl., ¶ 52.) Plaintiff's claim is thus clearly untimely under Delaware's three-year statute of limitations since Plaintiff did not amend the Complaint to name L.P. or Securities Intermediary as defendants until May 25, 2022, nearly three months after the third anniversary of the payment of the Death Benefit.

Plaintiff may argue that the statute of limitations should be tolled under Delaware's "discovery rule," which tolls the statute of limitations where the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732-33 (Del. 2020). Not so. Even when the discovery rule tolls the statute of limitations, the clock begins to run when plaintiff discovers the existence of facts "sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). Here, for the reasons explained above, Plaintiff was clearly in possession of all necessary facts prior to filing and serving the Amended Complaint.

Plaintiff may also argue that the Court should apply a "relation back" doctrine based on the filing date of his original Complaint, in an effort to save his stale claim. However, the relation

back doctrine does not apply here. Relation back does not save a claim when the Plaintiff substitutes a named defendant for a fictitious John Doe defendant. *See, e.g., Hogan v. Fisher*, 738 F.3d 509, 518 (2d Cir. 2013).

Under Federal Rule of Civil Procedure 15(c)(1)(C), a plaintiff may relate back an amendment to the original date of a pleading to save an untimely claim only if the prospective defendant knew or should have known the action would be brought against it, *but for plaintiff's mistake* concerning defendant's identity. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010). However, substituting a John Doe defendant with a named defendant is not a mistake, but is instead, a lack of knowledge on plaintiff's part. *Barrett v. City of Newburgh*, 720 F. App'x 29, 32-33 (2d Cir. 2017) ("lack of knowledge of a John Doe defendant's name does not constitute a mistake of identity"); *Hogan*, 738 F.3d at 518 (same) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)). Rule 15's relation back doctrine would apply if a plaintiff erroneously sues IBM Corp. when the correct name of the defendant was IBM Inc., not where a plaintiff sues John Doe and later learns the name of the party it wishes to sue.

Here, Plaintiff filed the original Complaint on January 18, 2022, and named as defendants ITM, John Does 1-5, and/or ABC Corporations 1-5. Complaint, ECF No. 1, ¶ 5. To substitute L.P. and/or Securities Intermediary for a John Doe and/or ABC Corporation defendant is not the same as correcting a misnomer or misidentification and thus is not a "mistake" within the meaning of Rule 15(c). Instead, Plaintiff lacked knowledge of the proper defendant's identity and failed to discover it within the statute of limitations. Thus, Rule 15(c) does not apply to save Plaintiff's untimely claim since he did not make a mistake within the meaning of the relation back doctrine.[13]

---

[13] Similarly, under Delaware state law, Plaintiff's amended Complaint does not relate back. An amended pleading can relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). However, Delaware law does not allow amendments to substitute parties for John Doe defendants to relate back. *Farris v. Moeckel*, 664 F. Supp. 881, 895 n.4 (D. Del. 1987) (noting that Delaware's relation back rule is

Finally, Plaintiff has not alleged that L.P. or Securities Intermediary took any action to cause Plaintiff to fail to learn of his claim. Although no facts concerning fraudulent concealment are alleged, Plaintiff may argue in opposition that L.P. and/or Securities Intermediary fraudulently concealed their identity and that such concealment should toll the statute of limitations. Any such argument would be baseless. Fraudulent concealment tolls the statute of limitations until Plaintiff discovers, or might have discovered by the exercise of diligence, the claim. *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 225-26 (E.D.N.Y. 2003). However, fraudulent concealment requires that "affirmative acts" be done that "were designed to and did conceal" the wrongdoing. *Fenn v. Yale Univ.*, 283 F. Supp. 2d 615, 636-37 (D. Conn. 2003). "Fraudulent concealment for purposes of tolling the statute of limitations must not be presumed, but must be 'strictly proven with clear, precise, and unequivocal evidence.'" *Id.* (quoting *Gibbons v. NER Holdings*, 983 F. Supp. 310, 315-16 (D. Conn. 1997)). Plaintiff has not met, and cannot meet, that burden.

First, Plaintiff was already on notice of his claim no later than when the death benefit was paid to Securities Intermediary for the benefit of L.P. Plaintiff knew that Mr. Garrett had taken out the Policy and that he had sold the Policy with the express understanding that the Policy may be kept in force by subsequent owners. Plaintiff knew when Mr. Garrett died, and evidently knew enough by the third anniversary of his father's death to commence the Federal Litigations.

Second, Plaintiff has not alleged facts to support fraudulent concealment. Plaintiff bears the burden of pleading with particularity the facts that give rise to the fraudulent concealment

---

"identical" to the federal rule and would have "no difference in outcome" for John Doe relation back issue); *see Lorenzetti v. Hodges*, No. S10C-07007RFS, 2012 WL 1410103, at *5 (Del. Super. Ct. Jan. 27, 2012) ("the claims based solely on a John Doe basis are not legally effective."); *see also Mergenthaler v. Asbestos Corp. of Am.*, 500 A.2d 1357, 1363 n.11 (Del. Sup. Ct. 1985) (noting that most circuits do not allow relation back to amend John Doe defendants).

claim, pursuant to Federal Rule of Civil Procedure 9(b). *See, e.g., Hodges v. Glenhome Sch.*, 713 Fed. Appx. 49, 51 (2d Cir. 2017); *Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 488 (D. Conn. 2015). In the absence of a confidential or fiduciary relationship between the party alleging fraudulent concealment and the alleged concealing party, a plaintiff alleging fraudulent concealment must allege some "affirmative act" on the part of the defendant to frustrate the discovery of the claim notwithstanding the plaintiff's diligence. *See Hamilton v. Smith*, 773 F.2d 461, 468 (2d Cir. 1985). Here, there is no confidential or fiduciary relationship between Plaintiff and either L.P. or Securities Intermediary. Nor has Plaintiff alleged that L.P. or Securities Intermediary have taken any actions to conceal their identity. Accordingly, the Court should reject any argument that fraudulent concealment requires tolling of the statute of limitations concerning Plaintiff's claim.

### B. Securities Intermediary Is Not a Proper Defendant.

Plaintiff's claim against Securities Intermediary also should be dismissed because Securities Intermediary did not retain any portion of the Death Benefit that Plaintiff seeks to "recover."

As explained above, on May 9, 2022, L.P.—the Policy's beneficial owner and the party who actually received the death benefit the Estate seeks to "recover"—commenced a declaratory judgment action in California state court, seeking a declaration that it is entitled to retain the Death Benefit and that the Estate has no right to the Policy's proceeds. (*See* Ex. A.) As L.P.'s allegations in that State Court Action make clear, when PHL paid the Death Benefit, the entirety of that Death Benefit was credited to the account of the beneficial owner of the Policy: L.P., not Securities Intermediary. (*See id.*, ¶ 42.)

The State Court Action exposes the fallacy of Plaintiff's claim seeking to "recover" the death benefit from Securities Intermediary because Securities Intermediary already has credited

the account of L.P., the ultimate beneficial owner of the Policy, with every penny of the Death

Benefit and did not retain a single cent of that money. In such a case, the only proper defendant

is the beneficial owner of the life insurance policy who actually received the death benefit that the

estate is attempting to "recover" through litigation. Plaintiff has attempted to plead around this

fact by alleging "[u]pon information and belief" only that Securities Intermediary "transferred all

or a portion of the $21,129,278.51 death benefit to [L.P.]." (AmCompl. ¶ 57.)

Under Federal Rule of Civil Procedure 8, "[a] pleading that offers 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do,'" and "[n]or does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, to "survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that

a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.*

Plaintiff purports to state a claim in support of Plaintiff's effort to "recover" the death

benefit from Securities Intermediary on the Policy where—as the State Court Action makes

clear—100% of the death benefit was credited to L.P.'s account when Mr. Garrett passed away

and the insurance company paid the death benefit due under the Policy. Plaintiff's allegations

conspicuously do not state that Securities Intermediary retained any portion of the Death Benefit,

and doing so would be inconsistent with its role as a securities intermediary under the Uniform

Commercial Code.[14]

---

[14] The reason Plaintiff cannot plausibly allege that Securities Intermediary was paid the death benefit is simple: Securities Intermediary serves as a conduit for its customer. When a death benefit is paid to Securities Intermediary

Plaintiff knows that L.P., as the Policy's beneficial owner, is the *only proper party* in an action to "recover" the death benefit because only that principal received the death benefit that the Estate seeks to "recover." Indeed, as Plaintiff's counsel stated in a sworn declaration to the United States District Court for the District of Delaware when seeking discovery from a different securities intermediary, U.S. Bank, in a litigation brought on behalf of the Estate of Roland Hoefer in one of the many "estate cases" that Plaintiff's counsel has filed all over the United States:

- "… it is well-known in the industry that … banks often make claims for death benefits on behalf of investors in connection with STOLI policies procured by Coventry" (Ex. G at ¶ 7);

- "… I need to know the identity of U.S. Bank's principal to whom the death benefits were paid so that I can ensure that the proper parties are named in a timely fashion and to avoid the argument that any statute of limitations has run. …" (*Id.* at ¶ 28);

- "… when it comes time to make a death benefit claim, the entity making those claims is typically U.S. Bank or Wells Fargo—not for themselves—but rather on behalf of whichever investor owns the policy at that time." (*Id.* at ¶ 29)

- "… when a death claim needs to be made to the insurance carriers, these claims come—not from the investors—but through intermediaries. Once the intermediaries receive the death benefit from the carrier, they credit the proceeds to the investors' account." (*Id.* at ¶ 30)

Simply put, securities intermediaries are not proper defendants in cases where estates seek to recover death benefits on matured policies that have been paid out by insurance carriers. Indeed, as the Delaware Supreme Court recently stated in another case that Plaintiff's counsel filed on behalf of a different estate client (where Delaware law applied, just as here), "a securities intermediary who merely acts on the instructions of the beneficial owner of a STOLI policy and

---

for the benefit of its customer, it is paid to Securities Intermediary solely in its role as securities intermediary and that death benefit is then credited to the account of its customer (the account holder), in this case L.P., in the same way as when a person buys or sells stock and holds the stock in the name of its broker. *See* Conn. Stat. § 42a-8-102(a)(13)(B) (defining a securities intermediary as, in relevant part, a bank "that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity."). A securities intermediary is no different than the broker in this example. It handles deposits and withdrawals from its client's account, but all those deposits and withdrawals are for the benefit of the account holder. When money is deposited into the account holder's account, that money belongs to the account holder, not to Securities Intermediary.

credits the policy proceeds to the beneficial owner's account is *unlikely to face ultimate liability* under Section 2704(b)." *Wells Fargo Bank, N.A. v. Est. of Malkin*, No. 172, 2022 Del. LEXIS 155, at \*24 (Del. Sup. Ct. May 26, 2022) (emphasis added). Thus, Plaintiff cannot state a plausible claim for relief against Securities Intermediary for recovery of any portion of the Death Benefit and, therefore, its claim against Securities Intermediary must be dismissed with prejudice.

## III. THE COURT LACKS PERSONAL JURISDICTION OVER L.P. AND SECURITIES INTERMEDIARY.

Even if Plaintiff's claim to "recover" the Death Benefit was not untimely and/or substantively meritless, the claims against L.P. and Securities Intermediary must be dismissed for the additional reason that exercise of personal jurisdiction over them would violate due process and is inconsistent with Connecticut's long-arm statute.

In diversity cases, the Court's personal jurisdiction over nonresident defendants such as L.P. and Securities Intermediary is governed by the Constitution as well as Connecticut's long-arm statute. *Am. Homecare Fed'n v. Paragon Sci. Corp.*, 27 F. Supp. 2d 109, 112 (D. Conn. 1998). Plaintiff bears the burden of demonstrating that the Court has personal jurisdiction over L.P. and Securities Intermediary. *Id.*

### A. Plaintiff Cannot Establish General Jurisdiction over L.P. or Securities Intermediary

General jurisdiction can only exist in circumstances where a non-resident defendant's contacts with the forum state are so substantial, continuous, and systematic "as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).[15] The

---

[15] Although the Court noted that it was possible that "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that state," citing the example of a company that relocated its principal place of business from the Philippines to Ohio during World War II (*see Daimler*, 571 U.S. at 129 n.19), this is not such a case.

"paradigm bases for general jurisdiction," in which a defendant corporation is considered at home, are its "[state] of incorporation and [its state of] principal place of business." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016).[16] Plaintiff does not seek to allege general jurisdiction over either L.P. or Securities Intermediary; in fact, Plaintiff alleges that L.P. is a Delaware limited partnership. (AmCompl. ¶ 5.) Similarly, Plaintiff alleges that Securities Intermediary is a national banking association (which therefore has no state of incorporation) and its principal place of business is located in Minnesota. (*See* AmCompl. ¶ 6.) Accordingly, Plaintiff has alleged no grounds to find general jurisdiction over L.P. or Securities Intermediary in Connecticut. (*See also* Lee Decl., ¶¶ 3, 10; Declaration of Christopher Nuxoll ("Nuxoll Decl."), filed herewith, ¶¶ 4-5.)

### B. L.P. and Securities Intermediary Are Not Subject to Specific Jurisdiction in Connecticut

Specific jurisdiction—also known as conduct-linked jurisdiction—exists if the claim arises from or is closely related to the defendant's contacts with the state. The inquiry of whether a forum state "may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation and internal quotation marks omitted). The relationship must arise out of the contacts that the defendant creates with the forum state that are themselves connected directly to the claim asserted, not the actions of the plaintiff or other third persons and the forum state. *Id.* at 284-86. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on 'random, fortuitous, or attenuated' contacts he makes by

---

[16] The same is true for unincorporated associations for their state of organization and principal place of business. *See, e.g., Finn v. Great Plains Lending, LLC*, No. 15-4658, 2016 WL 705242, at *3 (E.D. Pa. Feb. 23, 2016); *Jean-Louis v. Carrington Mortg. Servs.*, No. 19-cv-04302, 2020 WL 1042644, at *3 (E.D.N.Y. Mar. 4, 2020).

interacting with other persons affiliated with the state." *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))

In order to establish specific personal jurisdiction over a defendant, the plaintiff must show that (1) their claim directly arises out of or relates to the defendant's "contacts with the forum state;" (2) the defendant "purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there;" and (3) the exercise of jurisdiction is ultimately reasonable. *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998) (internal citations and quotation marks omitted). Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction.

Plaintiff has not alleged, and cannot establish, any of the three elements. First, Plaintiff's claim that it is entitled to the Death Benefit does not directly arise out of or relate to L.P.'s or Securities Intermediary's activities directed toward Connecticut. In the relatedness inquiry, the plaintiff must show a connection between the claim and the defendant's forum-state contacts; the plaintiff must show that the defendant's actions were "expressly aimed" at the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see also Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 173 (2d Cir. 2013).

Here, Plaintiff's claim arises out of its allegations that the Policy was illegally procured ten years before L.P. purchased the Policy (before L.P. even came into existence) and two years before Securities Intermediary was retained to act as securities intermediary by another unrelated investor. (*See* AmCompl. ¶¶ 11, 48-51;*see also* Lee Decl., ¶¶ 8-9; Nuxoll Decl., ¶¶ 6, 9.) Plaintiff does not allege that L.P. took any action in Connecticut that renders the Policy allegedly invalid; he alleges only that "Defendants" made a claim for death benefits from PHL and that PHL then sent a check for the amount of the Death Benefit to Securities Intermediary in Minnesota. (*See* AmCompl.

¶¶ 54-55, Ex. A thereto.)  The sole reason that the Death Benefit was paid from Connecticut is that a third party, Mr. Garrett, happened to obtain a PHL policy years before L.P. or Securities Intermediary had any connection to this action, and that PHL happens to be based in Connecticut. That is precisely the sort of fortuitous and attenuated contact that is insufficient to create specific personal jurisdiction as a matter of due process.  *See, e.g., Walden*, 571 U.S. at 286 (internal quotation marks omitted); *see also Waldman*, 835 F.3d at 337-38 (holding that families of American victims of a Palestinian attack in Israel were unable to exercise personal jurisdiction over the Palestinian Liberation Organization ("PLO") because the PLO's conduct was not expressly aimed at the United States and the contacts were therefore "random and fortuitous").

Second, Plaintiff cannot demonstrate that L.P. or Securities Intermediary "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted).  The Amended Complaint does not allege any facts suggesting that L.P. or Securities Intermediary voluntarily and purposefully availed themselves of the benefits and protections of the laws of Connecticut.  Again, Plaintiff's allegations of Securities Intermediary's limited contacts with Connecticut are insufficient to satisfy its burden of purposeful availment, as they are, at best, highly attenuated, and no such allegations are made against L.P. at all.  *See Palmer v. Globalive Commc'n Corp.*, No. 07 Civ. 038 (MGC), 2008 WL 2971469, *8 (S.D.N.Y. Aug. 1, 2008) (finding the signing of a letter of intent did not confer specific personal jurisdiction where the negotiations took place outside of the forum state and the signing of the letter in that state was "merely coincidental."). (*See also* Lee Decl., ¶¶ 10-12; Nuxoll Decl., ¶¶ 12-18.)

Finally, any exercise of jurisdiction over L.P. or Securities Intermediary under the circumstances at issue here would be unreasonable.  "The import of the reasonableness inquiry

varies inversely with the strength of the minimum contacts showing—a strong (or weak) showing by the plaintiff on minimum contacts reduces (or increases) the weight given to reasonableness." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002). In fact, where a plaintiff fails to demonstrate the necessary minimum contacts between the forum and the defendant, a court need not even reach the issue of reasonableness. *See, e.g. Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2d Cir. 1996). Here, Plaintiff has not demonstrated that minimum contacts exist between either L.P. or Securities Intermediary and Connecticut which relate in any way to the purported invalidity of the underling insurance policy, but even if the Court found that Plaintiff did so, the exercise of jurisdiction would not be reasonable. The Supreme Court has identified five factors for consideration under this prong: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (citing *Burger King*, 471 U.S. at 477). None of those factors favors the exercise of jurisdiction here, particularly given the weakness of Connecticut's interest in adjudicating this dispute—which does not involve any Connecticut-based parties or any injuries alleged in the state of Connecticut—and the availability of convenient and effective relief through the California state court action.

## C. L.P. and Securities Intermediary Are Not Subject to Jurisdiction under Connecticut's Long-Arm Statute

Connecticut's long-arm statute, Conn. Gen. Stat. § 33-929, imposes additional constraints on personal jurisdiction that go beyond those imposed by the Due Process Clause of the Constitution. *See, e.g. In re Conn. Asbestos Litig.*, 677 F. Supp. 70, 73 (D. Conn. 1986).

26

The Connecticut long-arm statute provides, in relevant part, that a court may exercise personal jurisdiction over a party arising: "(1) [o]ut of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." Conn. Gen. Stat. § 33-929. No such facts are alleged as against either L.P. or Securities Intermediary. As discussed above, the claim here does not arise from L.P.'s or Securities Intermediary's actions in the State (*see* Lee Decl., ¶¶ 10-12; Nuxoll Decl., ¶¶ 12-18); rather, they purportedly arise out of the manner in which the insurance policy was put in force many years before either Securities Intermediary or L.P. had any relationship to the Policy. Indeed, no injury in the State is alleged, much less the sort of continuous or persistent course of conduct necessary to find personal jurisdiction consistent with Supreme Court precedent.

## IV. PLAINTIFF CANNOT MAINTAIN A CLAIM FOR VICARIOUS LIABILITY AGAINST L.P. OR SECURITIES INTERMEDIARY.

Finally, Plaintiff asserts a claim of "vicarious liability," seeking to hold L.P. and Securities Intermediary liable for "all of the acts and/or omissions committed by ITM." (AmCompl. ¶¶ 68-73.) However, "vicarious liability is not an independent cause of action, under either federal or state law." *Broderick v. Rsch. Found. of State Univ. of N.Y.*, No. 10-CV-3612 (JS) (ETB), 2010 WL 3173832, *3 (E.D.N.Y. Aug. 11, 2010) (dismissing claim for vicarious liability with

27

prejudice). It is a doctrine that enables a defendant to be held liable for torts of another person. *Id.* Thus, any such claim is dependent upon the validity of Plaintiff's claims against ITM. *See, e.g., Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, No. 02 Civ. 2900 LMM GWG, 2002 WL 31819217, *3 (S.D.N.Y. Dec. 13, 2002) (considering vicarious liability of employer only after the underlying claim of misrepresentation against the employee was demonstrated). However, for the reasons stated in ITM's separate Motion to Dismiss, Plaintiff has no valid claim against ITM. Furthermore, Plaintiff's underlying claim concerning his purported entitlement to the Death Benefit must fail for the reasons set forth above. Accordingly, Plaintiff has no viable claim for vicarious liability against L.P. and Securities Intermediary based upon the purported actions of ITM, and his claim for vicarious liability should be dismissed as well.

## CONCLUSION

For the reasons stated herein, Plaintiff's Amended Complaint must be dismissed because this Court lacks subject matter jurisdiction over this dispute due to a lack of diversity of citizenship between Plaintiff and L.P. Because this Court has no jurisdiction, dismissal is mandatory. Although the Court need not reach the claim asserted, doing so provides independent grounds for dismissal (with prejudice) against all defendants because Plaintiff's claim is time-barred as a matter of law. In addition, the claim against Securities Intermediary fails for the additional reason that Securities Intermediary is not a proper defendant in this action under the statute underlying Plaintiff's claim as a matter of law. Furthermore, the Court may dismiss on the grounds that it lacks personal jurisdiction over L.P. and Securities Intermediary. Finally, Plaintiff's claim for vicarious liability fails because it is not an independent claim and Plaintiff cannot establish liability for its underlying claims against ITM or for its claims of entitlement to the Death Benefit.

Dated:  July 11, 2022

CARMODY TORRANCE SANDAK & HENNESSEY LLP


/s/ Gary S. Klein_____
Gary S. Klein (CT09827)
1055 Washington Blvd., 4th Floor
Stamford, CT 06901
Tel.:  (203) 252-2696
gklein@carmodylaw.com

Harry S. Davis (*pro hac vice* forthcoming)
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY 10022
Tel.: (212) 756-2000
harry.davis@srz.com

Jason T. Mitchell (*pro hac vice* forthcoming)
Schulte Roth & Zabel LLP
901 Fifteenth Street, NW, Suite 800
Washington, DC  20016
Tel, (202) 729-7470
jason.mitchell@srz.com

*Counsel for Defendants Viva Capital 3, L.P. and U.S. Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2022 I filed this document electronically and served it by mail on anyone unable to accept electronic filing.  The Court's electronic filing system will send notice of this filing by e-mail to all parties as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Gary S. Klein
Gary S. Klein