UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-20262-BLOOM/Otazo-Reyes

PACIFIC LIFE INSURANCE COMPANY,

    Plaintiff,

v.

U.S. BANK, NATIONAL ASSOCIATION,
*as securities intermediary*

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant U.S. Bank, National Association's ("U.S. Bank") Motion to Dismiss, ECF No. [56] ("Motion"), filed on June 13, 2023. Plaintiff Pacific Life Insurance Company ("Pacific Life") filed a Response in Opposition, ECF No. [60], to which Defendant filed a Reply, ECF No. [63]. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I.  BACKGROUND**

On January 23, 2023, Plaintiff initiated the instant action seeking declaratory relief. *See* ECF No. [1]. Specifically, Plaintiff seeks a declaration that an insurance policy (the "Policy") issued to Judith Weiser ("Ms. Weiser") is void *ab initio* because it was procured as a wagering contract. *Id*. ¶ 75. On April 20, 2023, Defendant filed its first Motion to Dismiss. Plaintiff thereafter filed the operative Amended Complaint seeking declaratory relief regarding the same stranger-originated life insurance ("STOLI") insurance policy which Plaintiff contends "lacked insurable interest because it was procured by and for the benefit of strangers without an insurable interest

under Delaware law." ECF No. [48] ¶¶ 1, 91. Plaintiff alleges that the STOLI Policy "was manufactured on the life of Judith Weiser, who, on information and belief, was induced to lend her life to investors who procured a $20 million wagering policy on her life [ ] in violation of Delaware's Constitution, insurable interest laws, and public policy." *Id*. ¶ 1. In December 2005, Pacific Life received a completed application for life insurance which identified the owner and beneficiary of the policy as the Judith A. Weiser 2005 Family Trust. *Id*. ¶¶ 51, 53. Plaintiff received the initial premium payment from Coventry, a third-party with no insurable interest in Ms. Weiser's life. *Id*. ¶¶ 60-61. On September 4, 2008, Pacific Life received and processed a request to transfer the ownership and beneficiary of the Policy from the Trust to U.S. Bank, N.A., as securities intermediary, care of Coventry First LLC. *Id*. ¶ 65. On September 8, 2017, Pacific Life received and processed a request to transfer the ownership and beneficiary of the Policy to U.S. Bank, N.A. as securities intermediary, care of Coventry First Contract Services department. *Id*. ¶ 66. Ms. Weiser passed on October 28, 2022, and thereafter, on December 23, 2022, Pacific Life received a claim for the Policy's death benefit by or on behalf of U.S. Bank. *Id*. ¶¶ 67-68. Plaintiff alleges that because the Policy was procured by Coventry through an illegal STOLI scheme, "Coventry lacked a valid insurable interest in the life of Ms. Weiser." *Id*. ¶ 71

On June 13, 2023, Defendant filed the instant Motion seeking dismissal and contends there is no basis for personal jurisdiction. In support, Defendant attached the Affidavit of Christopher J. Nuxoll ("Nuxoll"), Vice President at U.S. Bank, ECF No. [56-1] ("Nuxoll Affidavit"). Defendant further argues that because Defendant has already brought a separate action against Plaintiff in California state court for coercive relief, the case should be dismissed in favor of that action in California. *See generally* ECF No. [56]. Plaintiff responds that the life-wagering scheme alleged in the Amended Complaint is jurisdictionally linked to Florida and this Court is in a better position

to resolve the validity of an insurance policy that insured the life of a Florida resident. *See generally* ECF No. [60].

## II. LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id*. (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id*. (citations omitted). The reach of Florida's long-arm statute is a question of Florida state law, so the Court must construe that statute "as would the Florida Supreme Court." *Meier*, 288 F.3d at 1271 (quotation marks omitted). "Absent some indication that the Florida Supreme Court would hold otherwise," the Court must "adhere to decisions of its intermediate courts." *Sculptchair, Inc. v. Century Arts, Ltd*., 94 F.3d 623, 627 (11th Cir. 1996) (citation omitted).

## III. DISCUSSION

### A. Florida's Long Arm Statute

Florida's long-arm statute recognizes two kinds of personal jurisdiction over a non-resident defendant: general jurisdiction and specific jurisdiction. Fla. Stat. §§ 48.193(1)-(2). Here, Plaintiff alleges only that specific jurisdiction exists under § 48.193(1)(a), which provides, in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
> . . .
>
> 4. Contracting to insure a person, property, or risk located within this state at the time of contracting.

*Id.* § 48.193(1)(a). Plaintiff asserts that jurisdiction exists under § 48.193(1)(a)(1), the "doing business" provision, § 48.193(1)(a)(2) the "tortious acts" provision, and § 48.193(1)(a)(4), the "insurance contract" provision. Defendant responds that "none of the three prongs of the Florida long-arm statute identified by Pacific Life confers personal jurisdiction over [Defendant] in this [a]ction." ECF No. [63] at 11.

### i. Fla. Stat. § 48.193(1)(a)(1)

The "doing business" provision applies when a defendant operates, conducts, engages in, or carries on "a business or business venture in" Florida or has "an office or agency in" Florida. Fla. Stat. § 48.193(1)(a)(1). Plaintiff alleges that "[t]his Court has specific personal jurisdiction over U.S. Bank because U.S. Bank knowingly acquired an insurance policy (the "Policy") that insured the life of a Floridian." ECF No. [48] ¶ 6. Plaintiff also alleges that "throughout U.S.

Bank's ownership of the Policy, U.S. Bank routinely reached into the state of Florida by phone, letter, or other method to communicate with Ms. Weiser, her family members, her designated contacts, and/or her medical professionals to monitor her health, and to ultimately determine if and when she had died. U.S. Bank either did this itself or by requesting that entities like LexServ LLC do so." *Id*. ¶ 13. Plaintiff further alleges that "upon Ms. Weiser's death, U.S. Bank reached into Florida to request and obtain a copy of Ms. Weiser's death certificate from the Florida Bureau of Vital Statistics[.]" *Id*. ¶14.

Defendant contests Plaintiff's allegations, first by pointing out that Plaintiff did not explain how its allegations satisfy the requirements of the engaged in business prong, but also through the Nuxoll Affidavit. ECF No. [56-1] ¶¶ 1-2. Nuxoll asserts that Defendant "does not have any office, employee, or agent in Florida in connection with the life settlements portion of its business and does not supervise the life settlements portion of its business from Florida." *Id*. ¶ 4. Nuxoll further asserts that "[a]t no time did [Defendant] have any contact with Judith Weiser, her family, her estate, or any other individual or entity in Florida respecting the Policy or the payment of the Policy proceeds." *Id*. ¶ 9.

Defendant contends that "[m]erely requesting a death certificate from a Florida agency does not constitute '[o]perating, conducting, engaging in, or carrying on a business or business venture' in Florida[.]" ECF No. [56] at 17. In support, Defendant cites *Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co.*, No. 14-20914-CIV, 2015 WL 1437689 (S.D. Fla. Mar. 27, 2015). In that breach of contract action, a court in this district considered whether it had specific jurisdiction under 48.193(1)(a)(1) where the defendant "(1) entered into a contract with Plaintiff in Florida and sent renewal notices to Plaintiff in Florida, (2) is registered to transact business within the State of Florida, (3) has engaged in written and verbal communications directed to Plaintiff in Florida, (4)

accepted insurance premiums from Plaintiff which were sent from Florida, (5) utilized an independent field adjuster with an office in Florida to review and analyze the subject claim, and (6) breached an insurance contract by failing to make payments to Plaintiff in Florida." *Id*. at *1. That court considered the facts that even though the Defendant was a registered foreign corporation in the State of Florida, "Defendant Ansur neither maintains an office in Florida nor has it ever had any directors, officers, or employees located in Florida." *Id*. at *3. The court further considered that defendant did not advertise in Florida, own, use, or poses personal property in Florida, and that Plaintiffs did not demonstrate that Defendant had other clients in Florida or provide the percentage of overall revenue gleaned from Florida clients. *Id*. The court concluded that those facts, "taken collectively, do not show that Defendant was *operating, conducting, or carrying on a business* in this state to show or a general course of business activity in the state for pecuniary benefit." *Id*. (emphasis in original).

Plaintiff responds that Pacific Life's claims arise from U.S. Bank's business activities because there is a "direct affiliation, nexus, or substantial connection" between those activities and claims. ECF No. [60] at 14 (quoting *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 10 (Fla. 1st DCA 2000)). In *Glovegold,* the Florida First District Court of Appeal considered whether it had jurisdiction over a defendant that "provides insurance for vessels throughout the world." *Glovegold*, 791 So. 2d at 6-7. The defendant in that case issued a hull and machinery (H&M) insurance policy "for the period from July 31, 1995, to December 31, 1995." *Id*. at 8. Affidavits submitted by the plaintiff in opposition to a motion to dismiss established that the insured vessel was in Florida when the contract for insurance was initially executed and when the coverage was extended. *Id*. at *10. The *Glovegold* court therefore determined that a direct affiliation with Florida existed and there was personal jurisdiction. *Id*. at 10-11.

Plaintiff argues that the Nuxoll Affidavit's assertion that U.S. Bank did not have contact with Ms. Weiser, her family, estate, or any other individual in Florida regarding the Policy "appears to be based on the meritless notion these actions do not count because they were undertaken by U.S. Bank's *agents* – an allegation the U.S. Bank does not deny." ECF No. [60] at 14 n.6. Plaintiff further contends that "U.S. Bank engaged in business in Florida by owning a policy insuring the life of a Floridian and by perpetuating the wager on her life by continuing to pay the premium, by communicating with Ms. Weiser and/or her family to monitor her health and thus the status of its wager, and by trying to cash in on that wager by reaching into Florida to obtain her death certificate[.]" ECF No. [60] at 14. Plaintiff also argues that the "this Court need not consider U.S. Bank's self-serving affidavit on a motion to dismiss." *Id*. at 14 n. 6 (citing *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1282 n. 32 (M.D. Fla. 2009), *aff'd*, 451 Fed. Appx. 862 (11th Cir. 2012); *Estate of Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358-Orl-19DAB, 2007 WL 4482589, at *3 (M.D. Fla. Dec. 18, 2007)).

Defendant replies that "[u]nable to rebut the sworn statements in the Nuxoll Affidavit, Pacific Life resorts to mischaracterizing that Affidavit as a 'self-serving affidavit' that the Court 'need not consider . . . on a motion to dismiss.'" ECF No. [63] at 8. Defendant correctly points out that the cases Plaintiff cited suggesting that the court not consider the Affidavit were cases in which courts evaluated a 12(b)(6) motion for failure to state a claim rather than a motion to dismiss for lack of personal jurisdiction. The Court agrees with Defendant that it is proper to consider the Nuxol Affidavit in order to assess the 12(b)(2) Motion.

In a strikingly similar case, *Estate of Seymour Krinsky* v. *The GIII Accumulation Trust*, *et al*., No. 22-80059-CIV-SINGHAL (S.D. Fla. May 25, 2022), a court in this district dismissed a STOLI scheme action for lack of personal jurisdiction. There, the court explained that the

complaint "only pleads that LexServ monitored, serviced, maintained and collected or assisted in collecting on the Policy" and "after his passing, LexServ requested and obtained a copy of Mr. Krinsky's death certificate from the Florida Department of Health and used that death certificate to make a claim on the Policy." ECF No. [63-1] at 7. The court concluded that "it is difficult to characterize LexServ's servicing of a life insurance policy as engaging in a business venture in Florida." *Id*. at 9. There, like here, the defendant was "not alleged to be a contracting party with Plaintiff nor [a party that] solicited Plaintiff to contract." *Id*. at 9-10. The *Krinsky* court determined that "LexServ's servicing of the life insurance policy simply cannot be classified as a business venture." *Id*. at 10.

This Court reaches the same conclusion. As the *Krinsky* court explained:

> "For purposes of section 48.193(1)(a)(1), to demonstrate that a nonresident defendant is carrying on business the defendant's activities must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 555 (Fla. 2d DCA 2017) (citing *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 783 (11th Cir. 2014)) (cleaned up). "Factors to consider in making this determination include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *Stonepeak Partners*, 231 So. 3d at 555 (*citing RMS Titanic*, 579 Fed. Appx. at 784 (citing *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005))).

*Id*. at 6.

Plaintiff has not met any of the four factors enumerated by the Eleventh Circuit. To its Response, Plaintiff attached a motion to dismiss filed by Defendant in a case in the District of Delaware, ECF No. [60-1], a motion to dismiss or stay for f*orum non conveniens* filed by Defendant in a Delaware state court, ECF No. [60-2], A motion to dismiss filed by Defendant in the District of Connecticut, ECF No. [60-3], a transcript of proceedings from a state court in California, ECF No. [60-4], and an order from a New York state court, ECF No. [60-5],

demonstrating that Defendant has previously sought to litigate similar cases in the district or state in which the person whose life was insured resided. However, Plaintiff has not attached sufficient evidence to demonstrate Defendant's presence or operation of an office in Florida, the possession of a license to do business in Florida, the number of Florida clients served, or the percentage of overall revenue gleaned from Florida cases. Although the Eleventh Circuit cautioned that the four factors "are not dispositive," it also noted that "Florida courts have applied them to preclude jurisdiction before." *RMS Titanic*, 579 F. App'x 784. Although Plaintiff's attachments certainly support that Defendant's practices are inconsistent, the Court cannot find that Defendant is subject to specific jurisdiction based on the "doing business" provision of Florida's long arm statute. *See RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x at 783; *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d at 1167.

### ii. Fla. Stat. § 48.193(1)(a)(2)

Florida's "tortious acts" provision applies to defendants who "[c]ommit[ ] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Plaintiff alleges that "the Policy lacked an insurable interest prior to and at its inception and it was procured as an illegal wager on the life of the insured as part of a STOLI scheme in violation of, among other things, Delaware's strict constitution, statutory, and common law prohibitions on wagering." ECF No. [48] ¶ 69. Plaintiff further alleges that it "is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated Delaware's Constitution, statutes, common law, and public policy, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence." *Id.* ¶ 85.

Defendant argues that although Plaintiff has alleged that in 2005 another company, Coventry, procured the Policy through an illegal STOLI scheme, "all of this conduct occurred

outside Florida" and "Florida has no connection to the underlying factual allegations of the Amended Complaint." ECF No. [56] at 16.

Plaintiff responds that "from 2001 through 2013, U.S. Bank, Coventry, and AIG were parties to the Origination Agreements, through which these entities operated a nationwide human life wagering enterprise targeting seniors throughout the country and especially in Florida[.]" ECF No. [60] at 15. Plaintiff contends that "U.S. Bank understood it was furthering an enterprise through which U.S. Bank would assist Coventry in originating policies for Coventry and AIG on the lives of Florida seniors. So Coventry's act of reaching into Florida to solicit and induce Ms. Weiser is attributable to U.S. Bank for purposes of jurisdiction." *Id*. at 16. In support, Plaintiff cites to a Florida appeals court case and two cases from this district. *See Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. 2d DCA 1994); *AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1349 (S.D. Fla. 2009); *Lincoln Nat'l Life Ins. Co. v. Griffin*, No. 08-80965-CIV, 2009 WL 10668502 (S.D. Fla. May 12, 2009).

In *Wilcox*, Florida's Second District Court of Appeal held that if a plaintiff "successfully alleged a cause of action for conspiracy . . . and if [plaintiff] has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of the state of Florida through its long-arm statute[.]" 637 So. 2d at 337. Although the court did not specify what tortious act was committed in that case, the court did specify that the plaintiff had alleged one of the defendants "committed tortious acts in furtherance of the alleged conspiracy within the state of Florida." *Id*. at 336.

In *AXA*, a court in this district noted that "[t]he majority of the defendants . . . are alleged to be citizens of Florida" and similarly concluded that "Florida courts may exercise personal

Case 1:23-cv-20262-BB   Document 64   Entered on FLSD Docket 09/06/2023   Page 11 of 17

Case No. 23-cv-20262-BLOOM/Otazo-Reyes

jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state." 608 F. Supp. 2d at 1354. In support of that conclusion, the *AXA* court noted that "[t]he Eleventh Circuit has held that allegations of intentional torts support the exercise of personal jurisdiction over a nonresident defendant with no other contacts with the forum." *Id*. at 1355 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008)). The court found the "the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida." *Id*. at 1354

Similarly, in *Lincoln*, another court in this district found that because the complaint alleged that the defendant "participated with others to carry out an unlawful STOLI scheme" and "[s]ome of the acts in furtherance of the conspiracy are alleged to have occurred in Florida" the court had personal jurisdiction over the defendant despite the fact that the defendant "is not himself alleged to have made any specific contacts with Florida." 2009 WL 10668502, at *1. To reach that conclusion, the *Lincoln* court considered that the complaint alleged that one of the defendant's co-conspirators "met with Ms. Silver in her home in Boca Raton, Florida to help her complete an application that contained material misstatements." *Id*. The court concluded that such contact by a co-conspirator, rather than the defendant himself, was sufficient for the court to exercise personal jurisdiction over the defendant. *Id*.

Defendant responds that Plaintiff "failed to allege that *any* tort or civil wrong was committed in Florida" and states only in its response that Coventry reached into Florida to solicit and induce Ms. Weiser, but that that allegation "appears nowhere in the Amended Complaint." ECF No. [63] at 11 (emphasis in original).

The allegations in the Amended Complaint include that

- U.S. Bank was a co-conspirator in the "Delaware-based STOLI scheme through which the Policy was originated." ECF No. [48] ¶ 16.

- "U.S. Bank agreed to serve in various capacities such as securities intermediary to Coventry[.]" *Id*. ¶ 17.

- "The Policy at issue in this case, which insured the life of a Floridian named Judith Weiser, was one of the policies procured by Coventry with the assistance of U.S. Bank through the Delaware-based scheme." *Id*. ¶ 19.

- "The Application represented that the Insured signed the Application in Miami, Florida, on December 12, 2005." *Id*. ¶ 55.

Plaintiff's argument fails because the only action specifically alleged to have been taken in Florida was the signing of the Application by Ms. Weiser who is not alleged to be a co-conspirator in the STOLI scheme. The cases cited by Plaintiff in support of finding personal jurisdiction involved actions taken by an alleged co-conspirator in Florida to advance a tortious scheme. *See Wilcox*, 637 So. 2d at 337; *AXA*, 608 F. Supp. 2d at 1354-55; *Lincoln*, 2009 WL 10668502, at *1. Here, no such action by a co-conspirator was alleged. *See* ECF No. [48]. Because the Amended Complaint contains no allegations of any action taken by Defendant or any co-conspirator within the state of Florida, the Court finds that the tortious acts provision does not apply.

### iii. Fla. Stat. § 48.193(1)(a)(4)

The "insurance contract" provision of Florida's statute applies when a person contracts "to insure a person, property, or risk located within this state at the time of contracting." Fla. Stat. § 48.193(1)(a)(4). Plaintiff alleges that "[t]his Court has specific personal jurisdiction over U.S. Bank because U.S. Bank knowingly acquired an insurance policy (the 'Policy') that insured the life of a Floridian." ECF No. [48] ¶ 6.

Defendant argues that "[t]he fourth prong of the long-arm statute, which confers personal jurisdiction over a defendant who [c]ontract[s] to insure a person, property, or risk located within this state at the time of contracting, does not apply because [Defendant] is not an insurer and did not contract to insure Ms. Weiser." ECF No. [56] at 18 (internal quotation marks omitted). In support Defendant cites *Hudson Capital Properties IV, LLC v. Iecho*, in which Florida's Second District Court of Appeal found that the insurance provision did not apply because the "purchase of a policy in which an insurance company agreed to insure [a] Florida property did not bring Hudson capital within the ambit of section 48.193(1)(a)4's text." 341 So. 3d 1196, 1200 (Fla. 2d DCA 2022).

Plaintiff responds that "[t]his Court has long recognized that a defendant contracting to insure any person, property, or risk need not itself be an insurance company, but can instead be – like U.S. Bank here – an owner of a policy insuring someone else." ECF No. [60] at 13 (internal quotation marks omitted). In support, Plaintiff cites to two cases from district courts within the Eleventh Circuit. First, in *Lincoln Ben. Life Co. v. Joanne Bauer Irrevocable Life Ins. Tr. 12-2-2005*, the court considered whether Florida's long-arm statute applied in another STOLI scheme case. No. 8:12-CV-1729-T-33EAJ, 2013 WL 24590, at *3 (M.D. Fla. Jan. 2, 2013). The defendant conceded that Florida's long-arm jurisdiction applied because there was a relevant life insurance contract. *Id*. The court then proceeded to determine whether the action arose from the contracting for insurance and determined "that the connexity requirement is met here because the Policy on Bauer's life is central to Lincoln's claims." *Id*.

Similarly, in *Principal Life Ins. Co. v. Mayer for Mignon Kopel Life Ins. Tr.*, a court in this district considered whether it had personal jurisdiction over the defendants in an alleged STOLI scheme case. No. 09-20244-CIV, 2009 WL 10668947, at *3 (S.D. Fla. Dec. 15, 2009). The court

acknowledged that "Plaintiff has asserted that Defendants Mayer, Goldstein, and Freilich were co-conspirators in a scheme to procure a STOLI policy on the life of a Florida resident" and "Defendant Freilich contacted Mrs. Kopel in Florida pursuant to this alleged scheme[.]" *Id*. On that basis, the court found that "[a] conspiracy to insure the life of a person located in Florida is sufficient to convey Florida long-arm jurisdiction over all the alleged co-conspirators." *Id*.

Defendant distinguishes each of the two cases. First in *Lincoln*, Defendant points out that the defendant conceded that the insurance provision applied to her and that that the Defendant "had signed the policy application and was the trustee of the policy's owner and beneficiary at inception." ECF No. [63] at 7 (citing *Lincoln Ben. Life Co.*, 2013 WL 24590, at *1). Defendant also points out that in *Principal Life*, the court did not rely exclusively on the "insurance contract" provision of Florida's long-arm statute. *Id*.

The Court agrees with Defendant. Plaintiff has not provided any case law to support that acquiring the rights to an insurance contract conveys personal jurisdiction pursuant to the "insurance contract" provision. Rather, the cases Plaintiff cites demonstrate how the analysis could be different if Defendant conceded the issue of personal jurisdiction or if the "tortious act" provision applied. *See Lincoln Ben. Life Co.*, 2013 WL 24590, at *3; *Principal Life Ins. Co.*, 2009 WL 10668947, at *3. Plaintiff has not alleged that Defendant contracted to insure Ms. Weiser, but only that it knowingly acquired the insurance policy of which Ms. Weiser had already contracted. Those allegations are insufficient to support the conclusion that Defendant contracted to insure Ms. Weiser.

Because the Court has concluded that it does not have general or specific personal jurisdiction over Defendant, it does not address the remaining arguments for and against dismissal.

B.     **Request to Conduct Jurisdictional Discovery**

Plaintiff requests that, should the Court not find personal jurisdiction exists, it be permitted to conduct jurisdictional discovery. It argues that "it has shown a good faith basis on which to conduct discovery to obtain information bearing on the nature and extent of U.S. Bank's contacts with Florida." ECF No. [60] at 21. Defendant responds that "Pacific Life's half-hearted request for jurisdictional discovery should be rejected." ECF No. [63] at 13.

Plaintiff cites *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, No. 08-80017-CIV, 2008 WL 1771857 (S.D. Fla. Apr. 15, 2008) in which a court in this district noted that "Eleventh Circuit precedent indicates that jurisdictional discovery is highly favored before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want of personal jurisdiction." *Id*. at *1 (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982)). That court was considering a request for jurisdictional discovery brought within a Motion for Enlargement of Time to Respond to Motions to Dismiss and for Entry of Order Permitting Jurisdictional Discovery. *Id*. The court therefore authorized the jurisdictional discovery prior to resolving the Rule 12(b)(2) motion to dismiss.

Here, by contrast, Plaintiff did not request jurisdictional discovery prior to responding to the Motion. In response to the Defendant's first Motion to Dismiss, Plaintiff filed an Amended Complaint alleging additional jurisdictional facts. The parties then fully briefed the instant Motion and Plaintiff did not request jurisdictional discovery before doing so. The Eleventh Circuit explained that a "Plaintiff must be given an opportunity to develop facts sufficient to support a determination on the issue of jurisdiction." *Eaton*, 692 F.2d 727 at 731. But Plaintiff failed to request such an opportunity before the Court undertook its determination on the issue of jurisdiction. Plaintiff has not provided any authority to suggest that in the current posture, after the

Rule 12(b)(2) Motion has been decided, that a plaintiff is entitled to conduct jurisdictional discovery.

Defendant cites *Andres v. Raytheon Techs. Corp.*, in which a court in this district considered a 12(b)(2) motion to dismiss and request for jurisdictional discovery. No. 21-61757-CIV, 2022 WL 1015489 (S.D. Fla. Apr. 5, 2022). There like here, the court had determined that it lacked personal jurisdiction over the Defendants. *Id*. at 3. Having made that determination, the *Andres* court explained that "jurisdictional discovery is not warranted 'solely to remedy a lack of jurisdictional facts[.]'" *Id*. (quoting *In re Zantac (Ranitidine) Products Liab. Litig.*, No. 20-MD-2924, 2020 WL 6907056, at *3 (S.D. Fla. Nov. 24, 2020)). Because this Court has determined that personal jurisdiction is lacking it will not permit jurisdictional discovery to be taken to remedy the lack of jurisdictional facts.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [56]**, is **GRANTED.**
2. This Case is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.
3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.
4. The Clerk is directed to **CLOSE** this case.

Case No. 23-cv-20262-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 5, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record